2004 UT 100

**In the Matter of the DISCIPLINE OF Ray HARDING, Jr., # 1363.**

**No. 20020535.**

Supreme Court of Utah.

Nov. 30, 2004.

Billy L. Walker, Salt Lake City, for the Utah State Bar.

Gregory G. Skordas, Jack M. Morgan, Jr., Salt Lake City, for Ray Harding, Jr.

Richard G. Uday, Salt Lake City, for amicus Utah Lawyers Helping Lawyers.

WILKINS, Associate Chief Justice:

¶ 1 In the American system of justice, the fairness, impartiality, stability, and wisdom of our legal system depend in major part on the integrity of the men and women serving as judges. We expect those to whom we entrust our lives, fortunes, and honor to exemplify those virtues. Respect for the rule of law is necessary for a democracy to function and to flourish. As a consequence, respect for the rule of law by those we select as judges is mandatory.

¶ 2 In Utah, the responsibility of ensuring that only those capable of meeting this high standard reach, and stay on, the bench is shared. The governor appoints judges based upon the recommendation of a nonpartisan merit selection commission. The senate reviews these appointments and must confirm them before any judge takes the bench. Once state judges are appointed and confirmed, the voters periodically review their performance,[1] retaining those who have demonstrated adequate performance and, on rare occasions, removing those who have not.

¶ 3 In addition to retention elections, two other mechanisms are available to safeguard

1. Retention elections for state judges occur during regular general elections on six-year cycles for district, juvenile, and court of appeals judges, Utah Code Ann. § 20A–12–201(1)(b)(ii) (2003), and ten-year cycles for justices of the supreme court, *id.* § 20A–12–201(1)(b)(I).

against judicial misbehavior. First, pursuant to the Utah Constitution, the legislature has the authority to seek removal by impeachment of any judge who commits "high crimes, misdemeanors, or malfeasance in office." Utah Const. art. VI, §§ 17–19. Second, for those and other violations of the law or of the Code of Judicial Conduct, the state constitution empowers the Judicial Conduct Commission to investigate and recommend to the supreme court the discipline of sitting judges. Utah Const. art. VIII, § 13. Upon that recommendation, the supreme court has the authority to discipline a state judge or justice, as warranted.

¶ 4 Finally, as a voluntary matter, a judge or justice may choose to retire or resign to avoid the likelihood of other sanctions under some circumstances.

¶ 5 The judge in this case, Ray Harding, Jr., chose the latter option. He resigned from his seat on the Fourth District Court while an impeachment resolution was pending in the legislature and a recommendation from the Judicial Conduct Commission to remove him from office was in transit to the supreme court.

¶ 6 We accepted the resignation of former judge Harding, barred him from judicial office, and referred to the Utah State Bar the question of what additional action was appropriate under these circumstances. We directed the Bar to inquire into the facts of Harding's situation and to make a recommendation to us as to what, if any, action was necessary with respect to his continuing privilege to practice law in Utah. The Bar investigated and submitted its recommendations. It presented the results of its investigation to a screening panel of the Ethics and Disciplinary Committee, which is appointed by this court and part of the apparatus of lawyer discipline we have established. The screening panel recommended suspension and probation. However, the Office of Professional Conduct recommended that we consider disbarment of former Judge Ray Harding, Jr., for acts committed while sitting as a district court judge that violated the Rules of Profes-

sional Conduct. We agree that disbarment is warranted in this case.

## FACTS

¶ 7 On July 13, 2002, police responded to a domestic disturbance call at the home of Judge Ray Harding, Jr. There, the officers discovered cocaine, heroin, and drug paraphernalia. In addition, Harding tested positive for cocaine, opiates, and Valium. His wife informed the police that she had observed Harding smoking crack cocaine on a prior occasion and that Harding previously told her that he had been using crack and heroin since October 2001, while serving as a district court judge. Harding was arrested and charged with two counts of unlawful possession or use of a controlled substance, a third degree felony. Subsequently, he pled guilty to two counts of attempted possession or use of a controlled substance—a class A misdemeanor—and was sentenced to two one-year jail terms (with 120 days of actual incarceration), fined $9250, ordered to perform 500 hours of community service, and placed on two years' probation, which included participation in individual therapy and recovery programs.

¶ 8 At the time charges were filed, Harding was actively serving as a judge in the Fourth District Court. He has been a member of the Bar since 1978 and was appointed to the bench in September 1995. Beginning on July 14, 2002, the day after his arrest, various news media accounts informed the public of Harding's drug use, including the allegation that he had presided over court proceedings while under the influence of controlled substances. In response, Harding steadfastly maintained his innocence and maligned his wife in the media by branding her a liar and a bad influence on their children.

¶ 9 On November 19, 2002, the Judicial Conduct Commission instituted formal proceedings against Harding, who, although suspended from his duties and periodically incarcerated or in drug rehabilitation treatment, was still drawing his full judicial salary. Following a full disciplinary hearing

process, the Commission issued an order recommending removal in mid-February, 2003, which it then forwarded to us for our review and action. At approximately the same time, the Utah House of Representatives, in response to the public outcry over Harding's criminal conduct and continued status as a sitting district court judge, passed a resolution to impeach him, the first such resolution in Utah history. However, before the senate could vote on the resolution and before this court had received the Commission's recommendation, Harding resigned from the bench effective February 28, 2003. It was approximately one week later that Harding pled guilty to two counts of attempted possession or use of a controlled substance.

¶ 10 In an order dated March 25, 2003, this court acknowledged receipt of the Commission's recommendation but noted that Harding's resignation had rendered the issue of removal moot. Nevertheless, we ordered that Harding "be permanently disqualified from serving in any judicial or quasi-judicial position in the State of Utah" and, in a separate document, referred the question of Harding's fitness to practice law to the Office of Professional Conduct, instructing it to "proceed with a disciplinary review under its ordinary rules, but with its conclusions and recommendations regarding [Harding's] license ... to be submitted directly to this Court for final action."

■ ¶ 11 Pursuant to our directive, the Office of Professional Conduct conducted an investigation and presented its findings and recommendation at a formal hearing before a screening panel in January 2004. Harding, accompanied by counsel, appeared at the hearing, offered his own testimony and that of several witnesses, and presented arguments concerning the Office of Professional Conduct's proposed sanction. The screening panel considered the matter as it would for any lawyer caught in the snare of drugs. It noted Harding's efforts at rehabilitation and recommended a six-month suspension from the practice of law as the appropriate sanc-

tion. The panel further recommended that the suspension be stayed and that Harding be placed on probation for five years, provided he submit to random drug testing and continued to participate in a substance abuse rehabilitation program. The Office of Professional Conduct, to whom our instructions were directed, however, takes the position that Harding should be either suspended for two or three years or disbarred, based upon our constitutional authority to control the practice of law, and our prior actions suggesting that either the longer suspension or disbarment is the appropriate sanction in a case such as this. These recommendations now come before us for final disposition. Unlike other matters often handled here, lawyer discipline and judicial discipline come to us as matters of original jurisdiction, as opposed to being presented as an appeal. We review the recommendations in that light.

### ANALYSIS

■ ¶ 12 Under article eight, section four of the Utah Constitution, this court has plenary authority to discipline lawyers for their behavior as judges. *See* Utah Const. art. VIII, § 4 ("The Supreme Court by rule shall govern the practice of law, including ... the conduct and discipline of persons admitted to practice law."). In addition, Rule 6(c) of the Rules of Lawyer Discipline and Disability provides that "[a] former judge who has resumed the status of a lawyer is subject to the jurisdiction of the Supreme Court not only for conduct as a lawyer but also for misconduct that occurred while the lawyer was a judge." Utah R. Lawyer Discipline & Disability 6(c). In determining an appropriate sanction, this court is free to examine all relevant facts and circumstances and is under no obligation to defer to the conclusions of any other body. *See In re Anderson,* 2004 UT 7, ¶¶ 46–47, 82 P.3d 1134.

■ ¶ 13 As an initial matter, Harding argues that we lack jurisdiction over this proceeding. He contends, rather, that our "final order" of March 25, 2003, represents a

final determination under Rule 6(c) of the Rules of Lawyer Discipline and Disability and that this court is therefore barred from imposing any penalty other than the already-mandated disqualification of Harding from future judicial office. In short, the crux of Harding's argument is that our review of his fitness to practice law after we have permanently disqualified him from the bench subjects him to a form of double jeopardy. We disagree.

¶ 14 Our disagreement is based on several grounds. First, the source of our jurisdiction—article eight, section four of the Utah Constitution—gives us plenary authority to discipline lawyers for their behavior as judges. *See* Utah Const. art. VIII, § 4. Additionally, Rule 6(c) of the Rules of Lawyer Discipline and Disability provides that this court may sanction lawyers for misconduct committed while on the bench, except in cases where "the misconduct was … the subject of a judicial disciplinary proceeding as to which there has been a final determination by the Supreme Court." Utah R. Lawyer Discipline & Disability 6(c). Harding fails to note that no disciplinary proceeding reached us for which any final order could have then issued. Our action in March 2003 was prompted by his resignation, which included the pledge not to seek judicial office again. We simply took him at his word. The disciplinary proceedings, having stretched through a number of months in the Judicial Conduct Commission, were rendered moot, and never reached us for action, as a result of Harding's resignation.

¶ 15 Moreover, on the same day we accepted and memorialized Harding's resignation and pledge not to seek judicial office in the future, we also issued an order to the Office of Professional Conduct, directing it to proceed with a disciplinary review "under its ordinary rules, but with its conclusions and recommendations regarding Mr. Harding's license to practice law to be submitted directly to this Court for final action." Taken together, these simultaneous orders demonstrate that our disqualification of Harding from judicial office was not a "final determination" under Rule 6(c). Instead, these documents gave notice of our ongoing jurisdiction over the review of Harding's fitness to practice law within this state. Our jurisdiction over this matter is certain.

¶ 16 Regarding Harding's double jeopardy claim, we need only note that there is no basis for a claim of double jeopardy protection in either judicial discipline or lawyer discipline matters. Both are matters of appointment, oath, and privilege. Neither is a matter of criminal sanction, of being "twice put in jeopardy of life or limb" for the same offense. U.S. Const. amend. V. Double jeopardy protects against successive prosecutions for the same criminal offense, after acquittal, and not against successive judicial and lawyer discipline proceedings arising from the same misconduct by a sitting judge.

¶ 17 Finally, we reject Harding's claim that his due process rights were denied him in the process of factual determination undertaken by the Bar at our direction. Harding asserts that he did not receive a full and fair hearing before the screening panel because he did not have the opportunity to cross-examine adverse witnesses. He also argues that after the screening panel determined there was probable cause that he violated the Rules of Professional Conduct, the Office of Professional Conduct should have filed an action in district court pursuant to Rule 11 of the Rules of Lawyer Discipline and Disability, as opposed to a proceeding in this court. We disagree with both arguments.

¶ 18 Harding repeatedly relies upon an analogy to criminal process in making his arguments. However, as we have said before, attorney discipline matters are civil in nature. *In re Babilis,* 951 P.2d 207, 214 (Utah 1997). Moreover, attorney discipline proceedings, being the exclusive province of this court, are conducted under the rules and directions we give. The Ethics and Disciplinary Committee screening panel handled the factual investigation of Harding's misconduct. They did so because we directed the

Bar, through its Office of Professional Conduct, to follow its usual procedure in conducting the factual investigation up to a point.

¶ 19 Usually, if our Ethics and Disciplinary Committee determines that a serious violation of the canons of lawyer behavior has occurred, the matter is directed to the district court for a hearing on that evidence. The district court, in lawyer discipline matters, has only the jurisdiction or authority we delegate to it, and the decision of the district court, acting under a direct delegation of our exclusive authority, is subject to review only by us. In Harding's case, knowing that we neither needed nor desired the participation of the district court, we directed the Bar to return the matter directly to us for resolution. Our primary purpose was to develop a factual record that included Harding's claims and defenses, as well as the matters establishing the nature and extent of his misbehavior while a judge.

¶ 20 The Rules of Lawyer Discipline and Disability, under which the proceedings were conducted, do not provide to the attorney who is the subject of the hearing the right to cross-examine witnesses. In fact, all questioning is usually done by the screening panel, and includes opportunity for the lawyer, his legal counsel, and the complaining party, to suggest areas of inquiry to the panel. The accused lawyer is given prior notice of the charges, notice of the hearing, a right to be present at the hearing, and to be represented by counsel at the hearing. The lawyer is guaranteed a right to appear and present testimony, offer witnesses on his own behalf, and present an oral argument with respect to the complaint against him. The proceedings are recorded and preserved for review as necessary, and a written report of the panel's findings and conclusions is given to the lawyer. Utah R. Lawyer Discipline & Disability 10.

¶ 21 These measures are adequate, given the nature of lawyer discipline proceedings, to ensure due process to a lawyer accused of misconduct. Direct and cross-examination of the witnesses is not required in the quasi-administrative setting of the screening panel. As a result, we find no due process deficiencies in Harding's case.

¶ 22 Turning to the question of the appropriate punishment for Harding's misconduct, we hold that disbarment is necessary. As a preliminary matter, we emphasize that, although they are extremely useful guidelines and will be accorded deference in the vast majority of cases, this court is not restricted by the Rules of Professional Conduct in evaluating whether an attorney should be disbarred. Rather, we examine all relevant facts and circumstances in attempting to determine what punishment, if any, is appropriate to deter similar conduct and to protect the public. In this case, we also consider what action is necessary to restore any measure of lost public confidence in the system of justice caused by Harding's conduct. Here, there can be no question that Harding's behavior represented "conduct that is prejudicial to the administration of justice,"[2] which was made all the more egregious because Harding occupied a position on the district court bench. Upon accepting his appointment, Harding took a solemn oath to conduct himself in accordance with the highest standards of professional conduct, in furtherance of the public trust placed in him by the citizens of this state to properly administer justice. Rather than honoring this trust, however, Harding's subsequent behavior undermined it.

¶ 23 Standing alone, Harding's possession and use of unlawful controlled substances might not be enough to warrant disbarment. However, the totality of the circumstances indicates that such a penalty is indeed warranted here. To begin, after being charged, Harding continued to publicly maintain his innocence and malign his accusers for over a year. These protestations were widely reported in the media and disseminated to the general public. He did so with full knowledge of his culpability, as evidenced by his subsequent admission of

2. Utah R. Professional Conduct 8.4(d).

guilt. While we acknowledge Harding's right to remain silent and to vigorously defend himself against the criminal charges pending against him, his aggressive public statements themselves exacerbated the damage his conduct caused.[3]

¶ 24 Furthermore, despite being unable to hear cases due to the pending criminal charges, Harding continued to draw his full salary and otherwise enjoyed the emoluments of judicial office. Not only did such behavior bring disrepute upon the legal profession and undermine public confidence in the judiciary, it placed an undue burden upon his colleagues on the Fourth District Court and adversely affected those citizens served by that court. Compounding these abuses, Harding delayed his decision to resign until the last possible moment, and only did so under intense media coverage of the looming dual threat of impeachment by the legislature and removal by this court. In sum, all of these acts, taken together, constitute conduct prejudicial to the administration of justice and, given the circumstances surrounding their commission, merit disbarment in this case.

## CONCLUSION

¶ 25 In light of the nature and circumstances surrounding his misconduct, Ray Harding, Jr., is unfit to practice law in this state and is disbarred.

¶ 26 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.

---

**3.** We also note that the comment to rule 8.4(d) of the Rules of Professional Conduct states that "[l]awyers holding public office assume legal responsibilities going beyond those of other citizens." Utah R. Professional Conduct 8.4(d) cmt. Indeed, "[a] lawyer's abuse of public office can suggest an inability to fulfill the professional role of attorney." *Id.* Here, Harding's behavior demonstrates an inability to fulfill that role with the degree of fitness required to practice in this state.