2004 UT 77

**In the Matter of the DISCIPLINE OF Russell T. DONCOUSE, # 6718.**

**Utah State Bar, Plaintiff and Appellant,**

**v.**

**Russell T. Doncouse, Defendant and Appellee.**

**No. 20020916.**

Supreme Court of Utah.

Sept. 10, 2004.

Russell T. Doncouse, Clearfield, pro se.

Kate A. Toomey, Billy L. Walker, Salt Lake City, for the Bar.

PARRISH, Justice:

¶1 The Office of Professional Conduct (OPC) of the Utah State Bar appeals from a judgment of the district court suspending attorney Russell T. Doncouse from the practice of law for one year based on his violation of the Utah Rules of Professional Conduct during a previously ordered ninety-day suspension. The OPC argues that Doncouse's misconduct warranted disbarment. We disagree, but hold that the suspension ordered

by the district court should be increased from one to three years, the longest period of suspension authorized under our rules.

## BACKGROUND

¶2 On March 1, 2002, the district court entered an order suspending Doncouse from the practice of law for a period of ninety days.[1] On June 7, 2002, the OPC initiated contempt proceedings against Doncouse for allegedly continuing to practice law during the period of his suspension. The OPC based its contempt claim on allegations of three specific instances of misconduct, which were the subject of an evidentiary hearing before the district court.

¶3 First, the OPC alleged that Doncouse engaged in the unauthorized practice of law during the period of suspension by attempting to gain access to an inmate client at the Utah State Prison. After arriving at the prison, Doncouse identified himself as an attorney and presented his bar card. He also initialed papers as the attorney of record for the client. Doncouse testified that he was attempting to drop off a file requested by the client because the attorney who was to handle the case during Doncouse's suspension was not available. Doncouse identified himself as an attorney because he did not know whether prison officials would prohibit a suspended attorney from delivering a file. When questioned by prison officials about his status, however, Doncouse acknowledged his suspension.

¶4 Second, the OPC alleged that Doncouse engaged in the unauthorized practice of law by filing a reply document on behalf of a client during the ninety-day suspension. The document was signed by Doncouse as the relevant party's attorney. Doncouse testified that he prepared the reply document before the suspension began, even though it was not filed until after the start of the suspension, and that he belatedly realized that filing the document after his suspension began would constitute the unauthorized practice of law.

¶5 Third, the OPC alleged that Doncouse engaged in the unauthorized practice of law

1. Doncouse consented to the ninety-day suspension in the context of a discipline action filed against him by the OPC in response to a complaint filed by a client.

by undertaking the representation of a new client during the suspension period. Doncouse testified that he did not begin actual representation of the client until after the suspension ended, but there was evidence at the hearing that Doncouse spoke with an individual regarding a potential medical malpractice action, supplied information relevant to the individual's claims, and took pictures to be used in support of the claims before the end of the suspension period.

¶ 6 The OPC argued that disbarment was the appropriate sanction for these three instances of misconduct. The OPC relied additionally on the fact that Doncouse had filed an affidavit of compliance with the court near the end of the suspension period in which he had represented that he had complied with the order of suspension. Given the evidence of misconduct, the OPC argued that the affidavit was false.

¶ 7 On the basis of the evidence presented at the hearing, the district court made the following findings of fact:

On April 3, 2002, Doncouse requested access to an inmate client at the Utah State Prison. Doncouse identified himself as an attorney, used his Bar number, and signed papers identifying himself as the attorney of record for the inmate.

On April 22, 2002, Doncouse filed on behalf of a client ... a paper captioned "Reply to Defendant's Objection to Plaintiff's Motion to Vacate Motion to Dismiss".... The paper was signed by Doncouse and held him out as the attorney of record for the client.

On May 31, 2002, Doncouse submitted to the Court an Affidavit of Compliance stating that he "refrained from the practice of law during the period of March 1, 2002 through May 31, 2002." That statement was false.

In May 2002, Doncouse undertook the representation of [a new client] in a personal injury matter. Doncouse failed to disclose to [the client] that Doncouse was suspended from the practice of law and therefore could not accept new client matters.

¶ 8 On the basis of these factual findings, the district court found Doncouse in contempt for violating its prior order of discipline. It additionally concluded that Doncouse violated the Utah Rules of Professional Conduct. Specifically, the court found that Doncouse violated rule 5.5 (by continuing to practice law, including holding himself out as an attorney and filing papers in court while his license was suspended); rules 8.1(a) and 8.4(c) (by making misrepresentations of fact to prison officials and the court by holding himself out as an attorney); and rule 8.4(d) (by filing a paper in court for a client when he was not authorized to practice law, and by filing an affidavit of compliance falsely stating that he had complied with the court's order of suspension). The district court found that suspension was the presumptive sanction for the misconduct and, upon considering aggravating and mitigating factors, concluded that Doncouse should be suspended for one year. Although the OPC requested disbarment, the district court found that disbarment would be "too harsh for the types of transgressions that occurred."

## ANALYSIS

¶ 9 In reviewing attorney discipline cases, "we review the trial court's finding of facts under the clearly erroneous standard." *In re Ennenga,* 2001 UT 111, ¶ 9, 37 P.3d 1150 (quotation and citation omitted). However, "we reserve the right to draw different inferences from the facts than those drawn by the trial court." *Id.* (quotation and citation omitted). In this case, Doncouse does not dispute the factual findings of the district court, and we therefore do not disturb them.

¶ 10 A different standard, however, applies to our review of the sanction imposed by the district court. It is our duty to make an independent determination as to the appropriate sanction to be imposed. *See id.* at ¶¶ 9–10. In so doing, we rely on the Standards for Imposing Lawyer Sanctions for guidance. These standards state that the purpose of sanctioning an attorney is

to ensure and maintain the high standard of professional conduct required of those who undertake the discharge of professional responsibilities as lawyers, and to pro-

tect the public and the administration of justice from lawyers who have demonstrated by their conduct that they are unable or likely to be unable to discharge properly their professional responsibilities.

Standards for Imposing Lawyer Sanctions, Rule 1.1.

¶ 11 Rule 3 of the standards provides that the factors to be considered in determining the appropriate sanction for attorney misconduct are "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." *Id.* Rule 3.1. Rule 4 of the standards provides presumptive sanctions for certain misconduct, including disbarment and suspension.[2]

¶ 12 Disbarment is warranted as a presumptive sanction under rule 4 if a lawyer:

(a) knowingly engages in professional misconduct as defined in Rule 8.4(a), (d), (e), or (f) of the Rules of Professional Conduct [3] with the intent to benefit the lawyer or another or to deceive the court, and causes serious or potentially serious injury to a party, the public, or the legal system, or causes serious or potentially serious interference with a legal proceeding; or

(b) engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution, or importation of controlled substances; or the intentional killing of another; or an attempt or

conspiracy or solicitation of another to commit any of these offenses; or

(c) engages in any other intentional misconduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice law.

*Id.* Rule 4.2.

¶ 13 Suspension [4] is warranted as a presumptive sanction under rule 4 if a lawyer:

(a) knowingly engages in professional misconduct as defined in Rule 8.4(a), (d), (e), or (f) of the Rules of Professional Conduct and causes injury or potential injury to a party, the public, or the legal system, or causes interference or potential interference with a legal proceeding; or

(b) engages in criminal conduct that does not contain the elements listed in Standard 4.2(b) but nevertheless seriously adversely reflects on the lawyer's fitness to practice law.

*Id.* Rule 4.3.

¶ 14 Using these guidelines, the district court found that suspension was the presumptively appropriate sanction for Doncouse's misconduct. It then weighed aggravating and mitigating factors pursuant to rule 6 of the standards. *See id.* Rule 6; *see also In re Ince*, 957 P.2d 1233, 1237 (Utah 1998) ("Once a trial court determines the presumptive level of discipline, it may apply rule 6 and consider the aggravating and mitigating circumstances in deciding what sanction should ultimately be imposed."). The district court found the following aggravating circumstances:

---

(f) Knowingly assist a judge or judicial officer in conduct that is a violation of applicable Rules of Judicial Conduct or other law.
Utah R. Prof'l Conduct 8.4.

**2.** Under rule 4, the available sanctions for lawyer misconduct are admonition, reprimand, suspension, or disbarment. Standards for Imposing Lawyer Sanctions, Rule 4.

**3.** The referenced portions of rule 8.4 state that it is professional misconduct for a lawyer to:
(a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
. . .
(d) Engage in conduct that is prejudicial to the administration of justice;
(e) State or imply an ability to influence improperly a government agency or official;

**4.** Suspension is the removal of a lawyer from the practice of law for a specified minimum period of time. Generally, suspension should be imposed for a specific period of time equal to or greater than six months, but in no event should the time period prior to application for reinstatement be more than three years.
Standards for Imposing Lawyer Sanctions, Rule 2.3.

Doncouse has a prior record of discipline; Doncouse had a selfish motive in taking the [personal injury] case; there were multiple cases, although none standing on its own was extremely bad, but taken as a group they showed disregard for the initial sanction; there were deceptive practices in the form of submitting an affidavit indicating that Doncouse had complied with all the terms of the suspension and asked to be reinstated.

The district court, however, also recognized mitigating circumstances. Specifically, it found that

Doncouse made a sincere effort to try to comply with the suspension by transferring cases, but it wasn't complete and that is where the problem lies. The OPC has indicated that Doncouse was extremely cooperative with them and cordial throughout these rather tense proceedings, although it created a certain amount of anxiety and tension for Doncouse[,] and he handled himself well and was cooperative with the OPC. Doncouse has a good character and reputation in the legal community.

¶ 15 Having considered the aggravating and mitigating circumstances, the district court concluded that Doncouse's misconduct justified the imposition of a one-year suspension but that it did not warrant disbarment. We agree with the district court that disbarment is not required in this particular case.

¶ 16 "We do not administer the sanction of disbarment lightly; we understand its devastating effects on an attorney." *In re Johnson*, 2001 UT 110, ¶ 14, 48 P.3d 881. We previously have noted that the distinction between disbarment under rule 4.2 and suspension under rule 4.3 lies, in part, in "the attorney's motive and in the relative severity of the conduct." *In re Babilis*, 951 P.2d 207, 216 (Utah 1997). With regard to motive and severity of conduct, Doncouse's actions collectively do not rise to the level of egregiousness that warrants disbarment. Nor do we find the seriousness of injury that would likewise warrant disbarment.

¶ 17 The OPC argues that this case is substantially similar to *In re Johnson*, 830 P.2d 262 (Utah 1992) (per curiam), in which this court ordered the disbarment of an attorney who violated an order of suspension. That attorney, Richard Johnson, consented to a one-year probation which stayed a six-month suspension. *Id.* at 262. The order of discipline required Johnson to take certain actions during the period of probation, including submitting status reports concerning his work to clients, the Bar, and a supervising attorney. *Id.* In contravention of the order, Johnson failed to submit reports, failed to cooperate with the supervising attorney, and failed to appear at court hearings. *Id.* at 262–63. In addition, the Bar received six new complaints against Johnson. *Id.* at 262. The court consequently revoked the probation and imposed the six-month suspension. *Id.* at 262–63. During the six-month suspension, the Bar continued to receive complaints against Johnson. *Id.* at 263. Also during the suspension, Johnson "accepted new clients, negotiated retainer fees, provided legal advice to both new and existing clients, held himself out to the public as one authorized to practice law," and received compensation from his law firm. *Id.* In addition, he represented to new clients that "although it was necessary for another lawyer of the firm to be his 'mouth piece,' he would be the principal attorney and would continue to do all the legal work." *Id.* In short, Johnson made no effort to comply with the court's order of probation or suspension, essentially ignoring the imposition of sanctions and continuing with business as usual.

¶ 18 In contrast to Johnson, Doncouse made efforts, although imperfect, to comply with the court's order of suspension[5] and also to cooperate with the OPC. His continuing activities were not as extensive or flagrant as Johnson's, nor did they engender new complaints with the Bar. Therefore, we disagree with the OPC's assertion that we must disbar Doncouse pursuant to our holding in *Johnson*.

5. The district court found that "there were a number of very clear actions taken by [Don-

couse] to comply with the court order."

¶ 19 Although we do not believe that disbarment is appropriate, we do find that the penalty imposed by the district court was not severe enough to address the misconduct that occurred in this case. To serve as an effective deterrent for further misconduct, the penalty for violating an order of suspension must be more severe than the original suspension. We therefore extend the period of suspension imposed on Doncouse from one year to three years. At the conclusion of the three-year suspension, Doncouse may file a petition for reinstatement pursuant to rule 25 of the Rules of Lawyer Discipline and Disability. For the petition to be successful, Doncouse must demonstrate that he has met all of the requirements for reinstatement as detailed in rule 25(e), including full compliance with court orders, retaking and passing the Multistate Professional Responsibility Examination, and refraining from the unauthorized practice of law. In addition, it is apparent from the record and from statements made by Doncouse in his brief that Doncouse has experienced ongoing debilitating ailments that substantially adversely affect his ability to practice law. Although the district court did not find that these ailments were causally related to Doncouse's misconduct, we emphasize the need for them to be adequately addressed before Doncouse attempts to reassume the role of attorney.

## CONCLUSION

¶ 20 We hold that the district court did not err in imposing the penalty of suspension in this lawyer discipline proceeding. Although lawyer misconduct should never be taken lightly, the conduct in this case does not warrant the most severe penalty of disbarment. The duration of suspension appropriate in this case is three years, following which Doncouse may file a petition for reinstatement.

¶ 21 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.