2007 UT 44

**In the Matter of the DISCIPLINE OF Steven CRAWLEY, # 0750.**

**In the Matter of the Discipline of J. Keith Henderson, # 1459.**

**Nos. 20060451, 20060452.**

Supreme Court of Utah.

May 25, 2007.

Kate A. Toomey, Billy L. Walker, Salt Lake City, for Office of Professional Conduct.

Gregory G. Skordas, Rebecca C. Hyde, Salt Lake City, for Steven Crawley.

DURRANT, Justice:

## INTRODUCTION

¶ 1 The Office of Professional Conduct (the "OPC") appeals two district court decisions, which are consolidated for purposes of our review. In each case, the district court sanctioned an attorney found to have violated the Rules of Professional Conduct with suspension but, in one case, stayed the suspension and placed the attorney on probation and, in the other case, gave the attorney leave to petition the court to stay the suspension for a period of probation. The OPC asks this court to articulate guidelines regarding the use of probation as a sanction and to review the use of probation in the two cases at issue. Because we think it salutary that district courts have the discretion to impose probation as they see fit under the Standards for Imposing Lawyer Sanctions, we decline to adopt specific guidelines regarding probation.

## BACKGROUND

¶ 2 For the purpose of reviewing the use of probation in sanctioning attorneys for misconduct, we consolidated the two cases before us. But we review the facts of each case and the specifics of the misconduct at issue with respect to each attorney below.

## I. STEVEN CRAWLEY

¶ 3 Steven Crawley was a shareholder in the law firm of Babcock, Bostwick, Scott, Crawley and Price and represented one of the firm's clients, Interwest Construction ("Interwest"), in two matters relevant to his misconduct. The first matter involved a primary claim against Interwest and its three third-party claims against other entities. Although each of these claims would have been enhanced by an expert report or affidavit, Crawley failed to obtain either. As a consequence, Interwest lost some of its third-party claims for lack of supporting evidence, and the district court assessed attorney fees against it. The court later granted summary judgment against Interwest, citing the lack of an expert report as part of the reason. Crawley not only failed to inform Interwest that some of its third-party claims had been dismissed and that attorney fees had been assessed against it, but also misrepresented to both Interwest and the firm the status of the matter following summary judgment.

¶ 4 The second matter involved an action against Interwest for breach of contract and Interwest's counterclaim for breach of contract and negligence. As in the first matter, Interwest's position would have been enhanced by an expert report or affidavit, which Crawley again failed to obtain. The district court entered summary judgment against Interwest on its negligence counterclaim specifically because of the absence of an expert report, but Crawley informed Interwest that its counterclaim was dismissed for reasons other than this. The court later entered an amended judgment against Interwest, which Interwest decided to appeal. Although Crawley informed Interwest that the firm would appeal the judgment and, later, that an appeal had in fact been filed in the matter, Crawley never filed the appeal.

¶ 5 Crawley's misconduct also involved actions he undertook while he was responsible for managing the firm's business affairs and finances, including renewing the firm's professional negligence insurance coverage. When filling out a renewal application for that insurance coverage, Crawley checked the box marked "No" in response to the following question: "At this time, does any

applicant know of any act, omission, or circumstance that could reasonably give rise to a professional liability claim against any of the following: the firm, any past or present attorneys in the firm, or any predecessor firm." Crawley also signed the form as the "Authorized Principal or Applicant" and, in so doing, asserted that the statements he made on the form were true and that he had not misstated, omitted, or suppressed any material fact. But Crawley should have been aware that his handling of the two Interwest matters could reasonably have given rise to a professional liability claim against Crawley himself and the firm, and he failed to disclose this on the application.

¶ 6 Based on the above facts, to which both the OPC and Crawley stipulated, the district court found that Crawley had violated the following rules of the Utah Rules of Professional Conduct: 1.1 (Competence), 1.2(a) (Scope of Representation), 1.3 (Diligence), 1.4(a) (Communication), and 8.4(a) and (c) (Misconduct). The court also found the following aggravating factors: multiple offenses, conduct involving the elements of intentional dishonesty in the form of affirmative misrepresentations or omissions, and Crawley's substantial experience. And the court found the following mitigating factors: the absence of any other discipline during Crawley's twenty-eight-year career; the physical, personal, and emotional problems from which he was suffering at the time of the misconduct; that restitution was made; Crawley's good character reputation in the community; and his display of substantial remorse. The district court also noted that Crawley had been candid with the court and had done nothing to evade responsibility for his actions, that he had suffered a substantial loss of value in the firm, and that there was a possibility of other penalties and sanctions associated with his misconduct.

¶ 7 The district court determined that the appropriate presumptive sanction for Crawley's misconduct was suspension. After weighing the aggravating and mitigating factors, the court concluded that Crawley should be suspended from the practice of law for one year but that the suspension should be stayed in favor of eighteen months of proba-

tion with the following conditions: Crawley's misconduct is subject to public disclosure, he cannot engage in litigation or make any appearance in court, he cannot advertise, he must donate twenty-five hours of pro bono service, he must be seen by a mental health professional every four months and must bring a diagnosis of anxiety or depression to the court's attention, he must not violate the Rules of Professional Conduct, and he must take and pass the Multistate Professional Responsibility Examination.

## II.  J.  KEITH HENDERSON

¶ 8 The district court made the following findings with respect to J. Keith Henderson. Henderson represented William Blakley in a matter relating to an on-the-job accident in which the truck Blakley was driving overturned. Specifically, Blakley retained Henderson to pursue unpaid workers' compensation claims that Blakley had filed with the workers' compensation insurance carrier. Henderson knew that Blakley was also pursuing a personal injury claim against another driver involved in the accident, but did not advise Blakley that a settlement in the personal injury case could affect his workers' compensation claims. Around January 2000, Blakley's personal injury attorney settled the personal injury claim.

¶ 9 Without determining the status of Blakley's personal injury claim, Henderson, in February 2000, filed an Application for Hearing requesting a hearing before the Utah Labor Commission regarding Blakley's workers' compensation claims. The insurance carrier responded with a counterclaim for reimbursement for past payments and offset of future payments to Blakley because he received settlement proceeds from the defendant in his personal injury case. The Labor Commission set a hearing for June 2, 2000. Henderson did not give Blakley a copy of the insurance carrier's response prior to this hearing.

¶ 10 On June 2, Henderson met with Blakley as they traveled to the hearing and immediately prior to it. At the hearing, the administrative law judge ("ALJ") continued the hearing without date to see if the parties could reach a settlement regarding compen-

sation for Blakley. Prior to and after the hearing, Henderson again failed to fully explain to Blakley how the settlement in his personal injury case would affect his pending and future workers' compensation claims.

¶ 11 Blakley did not hear from Henderson after the June 2 hearing until he received a letter from Henderson dated November 30, 2000. The letter stated that the insurance carrier had a right to the third-party personal injury settlement and that Blakley was not entitled to recover a workers' compensation award.

¶ 12 On November 9, 2000, the district court suspended Henderson from the practice of law for unrelated matters for two years, but stayed all but six months of the suspension. Henderson neither notified Blakley that he was being suspended from the practice of law and could no longer represent him nor told Blakley that he would need to find a new attorney or represent himself pro se in the matter. Henderson also failed to provide Blakley with a copy of his file. Additionally, Henderson did not notify Blakley that the next hearing in his case was set for February 27, 2001, and that Blakley should attend.

¶ 13 On February 27, 2001, the ALJ conducted a status hearing in Blakley's case. When Henderson failed to appear at the hearing, the ALJ telephoned him. Henderson told the ALJ that he had withdrawn from the case because it settled, and the ALJ directed Henderson to file a withdrawal of counsel within ten days so that the case could move forward. Not only had the case not settled as of February 27, 2001, Henderson did not submit the requested withdrawal of counsel until October 15, 2002.

¶ 14 Based on these findings, the district court concluded that Henderson violated the following rules of the Utah Rules of Professional Conduct: 1.1 (Competence), 1.4 (Communication), 1.16(d) (Declining or Terminating Representation), 3.3(a) (Candor to the Tribunal), and 8.4(a) and (d) (Misconduct). After analyzing the factors of rule 3 of the Standards for Imposing Lawyer Sanctions, the district court concluded that the presumptive sanction for Henderson's miscon-

duct was suspension. In considering the actual sanction to be imposed, the court found these aggravating factors: a prior record of discipline, a dishonest or selfish motive, multiple offenses, obstruction of the disciplinary proceeding, a refusal to acknowledge the wrongful nature of the misconduct, substantial experience in the practice of law, and the lack of a good faith effort to rectify the consequences of the misconduct. As to mitigating circumstances, the court acknowledged that Henderson's counsel argued that Henderson gained nothing, including financial benefit, from his actions, and that Henderson presented evidence of good character from a practitioner in the same field.

¶ 15 The district court weighed the aggravating and mitigating circumstances and decided that suspension was the appropriate sanction for Henderson's misconduct. The court suspended Henderson for one year, but granted him leave to petition the court to stay all but three months of that suspension on certain conditions. Henderson, however, chose not to petition for such leave.

¶ 16 The OPC has, in both the Crawley and Henderson matters, appealed the parts of the district court orders suspending the attorneys but either staying that suspension, as in Crawley's case, or granting leave to petition for a stay of that suspension, as in Henderson's case. The OPC has asked us not only to review the sanctions imposed in both matters, but also to review the use of probation generally and provide specific guidelines for its use in sanctioning attorneys for misconduct.

## ANALYSIS

¶ 17 Under article VIII, section 4 of the Utah Constitution, we have the authority to "govern the practice of law, including admission to practice law and the conduct and discipline of persons admitted to practice law." In reviewing cases involving attorney discipline, we "review the trial court's findings of fact under the clearly erroneous standard," but "reserve the right to draw different inferences from the facts than those

drawn by the trial court."[1] As to the discipline actually imposed, our "constitutional responsibility requires us to make an independent determination as to its correctness."[2] In this case, neither Crawley nor Henderson disputes the factual findings of the district courts; we therefore leave those findings undisturbed.

¶ 18 When reviewing sanctions in attorney discipline cases, we rely on the Standards for Imposing Lawyer Sanctions for guidance.[3] The standards explain the purpose of sanctions and of the standards themselves:

The purpose of imposing lawyer sanctions is to ensure and maintain the high standard of professional conduct required of those who undertake the discharge of professional responsibilities as lawyers, and to protect the public and the administration of justice from lawyers who have demonstrated by their conduct that they are unable or likely to be unable to discharge properly their professional responsibilities.

. . . .

... The standards constitute a system for determining sanctions, permitting flexibility and creativity in assigning sanctions in particular cases of lawyer misconduct. They are designed to promote:

1.3.(a) consideration of all factors relevant to imposing the appropriate level of sanction in an individual case;

1.3.(b) consideration of the appropriate weight of such factors in light of the stated goals of lawyer discipline; and

1.3.(c) consistency in the imposition of disciplinary sanctions for the same or similar offenses within and among jurisdictions.[4]

¶ 19 Rule 2 of the standards lists the specific sanctions available to be "imposed on a lawyer upon a finding or acknowledgement that the lawyer has engaged in professional misconduct."[5] These sanctions are as follows: disbarment, suspension, interim suspension, reprimand, admonition, probation, resignation with discipline pending, other sanctions and remedies (including restitution, assessment of costs, limitation upon practice, appointment of a receiver, and a requirement that a lawyer take the bar examination or professional responsibility examination), and reciprocal discipline.[6] The standards offer specific guidance as to four of these sanctions; rule 4 outlines circumstances under which disbarment, suspension, reprimand, and admonition are the appropriate presumptive sanctions. And rules 21 and 22 of the Rules of Lawyer Discipline and Disability offer guidelines for seeking resignation with discipline pending and reciprocal discipline. Thus, of the sanctions listed in rule 2, only probation and "other sanctions and remedies" lack details guiding their use.

¶ 20 This does not mean, however, that courts are provided no direction as to probation or other sanctions and remedies. Rule 3 of the standards provides guidelines that should be considered in imposing sanctions, which are "the duty violated," "the lawyer's mental state," "the potential or actual injury caused by the lawyer's misconduct," and "the existence of aggravating or mitigating factors."[7] In the ordinary case, after finding that an attorney has violated the Rules of Professional Conduct, a court considers the factors of rule 3 and determines the presumptive level of discipline with respect to the guidelines given in rule 4. It then weighs the aggravating and mitigating circumstances in determining the sanction that should ultimately be imposed and departs from the presumptive level of discipline if the aggravating and mitigating factors are "significant."[8]

1. *In re Ince,* 957 P.2d 1233, 1236 (Utah 1998).

2. *Id.*

3. *See In re Ennenga,* 2001 UT 111, ¶ 10, 37 P.3d 1150.

4. Standards for Imposing Lawyer Sanctions, Rule 1.

5. *Id.* 2.1.

6. *Id.* 2.

7. *Id.* 3.

8. *In re Ince,* 957 P.2d 1233, 1237–38 (Utah 1998).

¶ 21 The OPC argues, however, that this process has produced undesirable results with probation being inappropriately imposed as a final sanction. To guide district courts in their use of probation, the OPC asks us to adopt guidelines detailing the circumstances under which probation is not appropriate. The OPC argues that probation should never be available where an attorney's "misconduct reflects an absence of integrity that cannot be remedied with further training or supervision." The OPC believes this is the case when the duty violated was the duty to deal honestly with clients, tribunals, or third parties and when the attorney's mental state in committing the misconduct was knowing or intentional. Furthermore, the OPC maintains that probation should not be available, even absent misconduct involving an attorney's knowing or intentional dishonesty, when certain aggravating factors are present that "suggest that the [attorney] is unlikely to cooperate with the OPC and has not demonstrated the self-awareness that is a necessary component of a true commitment to change." Specifically, the OPC identifies the following aggravating factors that should preclude probation: a dishonest motive;[9] a "refusal to acknowledge the wrongful nature of the misconduct involved";[10] the "submission of false evidence, false statements, or other deceptive practices during the disciplinary process";[11] and the "obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary authority."[12]

¶ 22 We appreciate the OPC bringing this issue to our attention; we decline, however, to adopt its proposed guidelines or fashion any of our own design. We are satisfied—indeed pleased—with the discretion currently being exercised by district courts in sanctioning attorneys for misconduct. It is a delicate and often difficult task to craft sanctions appropriate for individual attorneys, no two of which have engaged in the same misconduct under the same aggra-

vating and mitigating circumstances. The standards "permit[ ] flexibility and creativity in assigning sanctions,"[13] and the district courts have embraced this approach.

¶ 23 Our district court judges do a remarkable job of fulfilling a stated purpose of the standards—protecting the public and the administration of justice—while still providing the opportunity, when appropriate, for attorney rehabilitation. Were we to limit the circumstances under which probation is available, we would very likely undermine the ability of the district courts to so effectively maintain this balance. In fact, we note that the imposition of probation with the right conditions may in some cases be more protective of the public than a period of suspension. Rather than simply punishing (suspending) an attorney for misconduct and then allowing the attorney to resume the practice of law, a district court that imposes probation and designs attorney-specific terms provides an opportunity for the attorney to change his or her ways and, in so doing, protects the public from that attorney's *future* misconduct. Importantly, in this respect ours is a self-correcting system. Where probation does not adequately rehabilitate a lawyer, district courts will be wary of imposing similar probationary terms in similar situations in the future.

¶ 24 In Crawley's case, we find that the district court appropriately exercised its discretion and uphold the sanction it imposed: a one-year stayed suspension with eighteen months of probation subject to a multitude of conditions. We also uphold the district court's sanction with respect to Henderson and, in doing so, express the following concern. In *In re Doncouse*[14] we stated that "[t]o serve as an effective deterrent for further misconduct, the penalty for violating an order of suspension must be more severe than the original suspension."[15] Henderson's misconduct occurred, in part, while he was serving a two-year suspension, with all but six months of that suspension

---

9. Standards for Imposing Lawyer Sanctions, Rule 6.2.(b).

10. *Id.* 6.2.(g).

11. *Id.* 6.2.(f).

12. *Id.* 6.2.(e).

13. *Id.* 1.3.

14. 2004 UT 77, 99 P.3d 837.

15. *Id.* ¶ 19.

stayed. Although Henderson's sanction in *this* matter should be more severe than the stayed suspension that he violated, we decline to impose a more severe sanction now because the OPC did not appeal on this issue. We thus uphold the sanction imposed by the district court of a one-year suspension with leave to petition the court for probation. But we put the bar and bench on notice that less severe terms of suspension and probation are inappropriate sanctions for an attorney who violates the terms of an existing suspension or probation.

## CONCLUSION

¶ 25 We decline to adopt specific guidelines regarding the use of probation as a sanction for attorney misconduct. District courts are exercising appropriate discretion in fashioning individualized sanctions involving probation for attorneys, and we wish to maintain that discretion. Additionally, we uphold the sanctions imposed by the district courts on Crawley and Henderson.

¶ 26 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT'S opinion.