*This opinion is subject to revision before final
publication in the Pacific Reporter.*

**2013 UT 14**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In the Matter of the Discipline of THOMAS V. RASMUSSEN,

UTAH STATE BAR
*Plaintiff and Appellee,*

*v.*

THOMAS V. RASMUSSEN
*Defendant and Appellant.*

No. 20110696
Filed March 12, 2013

Third District, Salt Lake
The Honorable L.A. Dever
No. 090908841

Attorneys:

Todd Wahlquist, Billy L. Walker, Salt Lake City, for appellee

Sara Pfrommer, Salt Lake City, for appellant

JUSTICE LEE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE PARRISH joined.

JUSTICE LEE, opinion of the Court:

¶1   Thomas V. Rasmussen was disbarred after he defied an order suspending him from the practice of law. He challenges the disbarment on procedural and substantive grounds. We affirm. The disciplinary proceedings before the district court were procedurally proper and the circumstances of Rasmussen's misconduct warrant disbarment under our rules and caselaw.

I

¶2   The Office of Professional Conduct (OPC) filed a complaint against Thomas V. Rasmussen alleging violations of Utah Rules of Professional Conduct 8.4(a) and (d) in connection with his repre-

sentation of a client in a criminal case. Specifically, Rasmussen was accused of conduct prejudicial to the administration of justice—in submitting multiple recusal motions when only one such motion is allowed by rule and in failing to appear at trial. After briefing and a hearing on the complaint, the district court entered an Order of Sanction on July 21, 2010, suspending Rasmussen for one year but staying all but 181 days of the suspension. The district court conditioned the stay on Rasmussen (1) entering and completing an ethics and professional conduct course; (2) refraining from practicing law during his suspension and certifying that fact by affidavit; (3) not violating any Rules of Professional Conduct for one year; and (4) changing his office procedures to improve communication with the court, its staff, and opposing counsel.

¶3    In December of that year, OPC learned that Rasmussen, despite his suspension, had "held himself out as an attorney representing a client" to a district court during his suspension. OPC sent him a letter warning him to abide by his suspension and meet his obligations under the Rules of Lawyer Discipline and Disability (RLDD) or be subject to an order to show cause.

¶4    Soon thereafter—and just 158 days after the effective date of the suspension—Rasmussen filed a Verified Petition for Reinstatement stating that he had "compli[ed] with the terms and conditions of the Court's Order of Sanctions." He also filed an affidavit indicating that he had "not practiced law for a total of 181 days up to the time of [his] anticipated reinstatement in this matter." After receiving Rasmussen's verified petition and affidavit, OPC, concluding that his reinstatement was governed by RLDD 14-525 (applicable to suspensions greater than six months), prepared a notice of proposed reinstatement to be printed in the Utah Bar Journal, propounded discovery requests, and began preparing its opposition to Rasmussen's reinstatement. Upon receiving Rasmussen's filings, the district court clerk, according to court records, contacted OPC and "was told that [OPC] would not be responding to" the filings—a point now disputed by OPC.

¶5    More than ten days after filing the petition and affidavit, Rasmussen delivered to OPC and submitted to the district court a proposed Order of Reinstatement, which the district court signed the same day. OPC mailed a motion and memorandum opposing Rasmussen's reinstatement the following day, not realizing that

the reinstatement order had already been signed. OPC's opposition argued that the reinstatement was premature under RLDD 14-525(f), which allows OPC sixty days in which to object to a petition for reinstatement after receiving it. In a reply memorandum, Rasmussen countered that RLDD 14-524 (not 14-525) governed because his suspension was for less than six months, making OPC's opposition untimely because RLDD 14-524 allows only ten days following the receipt of a reinstatement affidavit to object. In response, OPC argued that RLDD 14-525 should apply because Rasmussen's suspension was for one year—with all but 181 days suspended—making it more than six months. OPC also informed the court that it would oppose reinstatement because Rasmussen had continued to practice law during his suspension.

¶6   At a hearing on these filings, the district court acknowledged that its original intention was that Rasmussen's suspension be for one year and that his reinstatement be governed by RLDD 14-525. At the same time, however, the court acknowledged that the suspension order was poorly worded and unclear and that Rasmussen had relied on his understanding that his suspension was for less than six months. As a result, and in "the interest of fair play and equity," the district court effectively gave both sides the benefit of any doubt. It tentatively affirmed Rasmussen's order of reinstatement (without citing either RLDD 14-524 or -525 as the basis for reinstatement). Yet it also allowed "OPC [to] bring any information to the Court that it might have that Mr. Rasmussen acted in violation of its Order of sanctions."

¶7   OPC thereafter, and in accordance with the affirmation order, filed a "Motion for the Court to Consider Evidence of Rasmussen's Failure to Comply with Its Sanctions Order," in which it argued that Rasmussen had continued to practice law during the course of his suspension, making thirty-six court appearances and submitting seventeen filings in cases. In response, Rasmussen conceded that he had practiced law during the suspension but sought to characterize his appearances as attempts to withdraw, attempts to wind up his involvement in a case, or attempts to continue matters until after his reinstatement. He also stated that because he normally gains over one hundred new cases in a six-month period, this activity was "substantially" compliant with the sanction order. He further stated that his suspension caused him to incur large debt and stretched his limits financially and that his

continuing practice was an attempt to maintain his way of life and his "presence in the community."

¶8   At a hearing on OPC's motion, Rasmussen admitted that he took on new cases during his suspension, that he appeared in court for those cases, and that he did so because he was facing the loss of his house and practice. OPC sought disbarment based on these concessions. The court agreed with OPC and disbarred Rasmussen, finding that Rasmussen had violated his duty to comply with the sanctions order because he needed money, thereby injuring the public and the judicial system. The court also found no mitigating circumstances to counter the aggravating circumstances it saw, including the facts that Rasmussen violated his suspension "for his own financial benefit" and that his "violation was not a single episode but nearly two score." Rasmussen now appeals, and we affirm for the reasons set out below.

II

¶9   Rasmussen challenges the disbarment order primarily on procedural grounds. He contends that the district court lacked jurisdiction to consider OPC's opposition to his reinstatement once it signed the reinstatement order. He also asserts that the doctrines of res judicata and law of the case barred the district court from revisiting his reinstatement and imposing disbarment. Alternatively, Rasmussen challenges his disbarment on the substantive grounds that (1) lifting the stay imposed by the order—rather than disbarment—was the proper form of discipline for violation of the order, (2) the court erred when it concluded that disbarment was the presumptive level of discipline, and (3) the court failed to consider mitigating factors that counsel against disbarment. Though a district court's decision to grant relief from a judgment is reviewed under an abuse of discretion standard, *Russell v. Martell*, 681 P.2d 1193, 1194 (Utah 1984), we make our own independent determination about the appropriate sanction in attorney discipline cases, *In re Discipline of Ennenga*, 2001 UT 111, ¶¶ 9–10, 37 P.3d 1150. We consider each of Rasmussen's arguments in light of these standards and reject each. Accordingly, we uphold the district court's order of disbarment.

A

¶10 Rasmussen first contends that the district court exceeded its jurisdiction when it entertained objections to his already-

entered reinstatement. Specifically, he asserts that his reinstatement was governed by RLDD 14-524[1] and that once the procedures allowed by that rule were complied with—a ten-day objection period, followed by a hearing and automatic reinstatement—the court could do no more. We disagree.

¶11 Our rules governing lawyer discipline provide that Utah's Rules of Civil Procedure govern attorney discipline proceedings unless specifically altered by the disciplinary rules themselves. RLDD 14-517(a). And nothing in our lawyer discipline rules displaces the court's ability to consider post-judgment motions under Utah Rules of Civil Procedure 59 and 60(b). *See* UTAH R. CIV. P. 59 (allowing a motion for a new trial); UTAH R. CIV. P. 60(b) (allowing the court to "relieve a party . . . from a final judgment, order, or proceeding").

¶12 OPC's opposition to Rasmussen's reinstatement was effectively a rule 60(b) motion. Rule 60(b)(6) allows a party to ask a court to reconsider a final judgment based on "any other reason justifying relief from the operation of the judgment." Though such motions are to be heard in only "unusual and exceptional circumstances," *Kell v. State*, 2012 UT 25, ¶ 18, 285 P.3d 1133 (internal quotation marks omitted), this case fits that bill. Here, the ambiguity in the suspension order created confusion about which rule— RLDD 14-524 or -525—controlled Rasmussen's reinstatement. And that confusion meant that each party was operating under a

---

[1] OPC contends that Rasmussen always understood his suspension to be for more than six months and thus governed by RLDD 14-525. Some of Rasmussen's actions could be construed to support that contention. For instance, he filed a verified petition seeking reinstatement, which is required by RLDD 14-525 rather than 524. Nevertheless, we think his actions as a whole are indicative enough of a belief that RLDD 14-524 governed reinstatement to support the district court's decision to give him—and OPC—the benefit of the doubt. Because we agree with the district court's equitable decision to not hold the proceedings under any one rule, we need not and do not decide which rule the district court should have employed for purposes of this appeal. Going forward, however, we clarify that the governing rule should be dictated by the term of the entire possible suspension, not the unstayed portion of the suspension.

different set of expectations and a different timeframe. The district court, to its credit, acknowledged as much in ruling on OPC's opposition to the reinstatement—solomonically giving each party the benefit of the doubt by tentatively leaving the reinstatement order in place but allowing OPC an opportunity to challenge it further. We find wisdom—and certainly no error—in that decision, which was entirely appropriate under rule 60(b)(6) given these unusual circumstances.

¶13 Rasmussen challenges the applicability of rule 60(b) here. He notes that OPC's opposition made no reference to that rule and asserts that our cases disfavor treating a motion as one under rule 60(b) where it is not captioned as such. *See Workers Comp. Fund v. Argonaut Ins. Co.*, 2011 UT 61, ¶¶ 13–15, 266 P.3d 792. We see no barrier in our rules or our cases, however, for analyzing OPC's opposition under rule 60(b).

¶14 Nothing in *Argonaut* or elsewhere prohibits district courts from entertaining, under rule 60(b), a filing not captioned as such. Our cases merely emphasize the need to keep the "burden of argument and research . . . on the party seeking relief." *Judson v. Wheeler RV Las Vegas, L.L.C.*, 2012 UT 6, ¶ 20 n.9, 270 P.3d 456. We accordingly decline, on appeal, to allow a party to "shift[] to opposing parties or to the court" the burden of establishing the basis or import of the party's motion below, and thus would not reverse a decision that is based on the moving party's failure to "identif[y] for the court the essential basis for the motion" below. *Id*. This case presents a very different circumstance. We are faced not with a district court's *denial* of a motion for failure to identify its essential basis, but with a decision *granting* a motion that we now deem properly presented. Thus, although the district court may not have been required to construe OPC's motion as arising under rule 60(b), it had the discretion to do so. *See Argonaut*, 2011 UT 61, ¶ 15 n.5 (emphasizing the district court's "broad discretion in determining whether to construe a motion under rule 59 or rule 60(b)"). And because we find an ample discretionary basis for treating OPC's opposition as a motion arising under rule 60(b), we affirm the district court's decision to hear the motion as an appropriate exercise of discretion.

¶15 We likewise affirm the district court's decision granting OPC's subsequent motion to present further evidence of Rasmussen's violations of the suspension order. Nothing precludes a

court from hearing one post-judgment motion, deciding that it needs more information, and allowing further development of an issue. In such a case, further motion practice would be necessary to resolve the case completely. Though Rasmussen describes the court's affirmance of his reinstatement after the first post-judgment motion as conclusively resolving this issue, it did not. The district court's affirmance of the reinstatement was clearly conditional, subject to whatever information OPC submitted about possible violations of the sanctions order.[2] And the conditional nature of the order gave an ample basis for the court to consider that further information.

B

¶16 Rasmussen next challenges the district court's decision to reopen the reinstatement order on preclusion grounds—under the doctrines of res judicata and the law of the case. He views the reinstatement order as final and preclusive of any further proceedings. We disagree.

¶17 Res judicata and its companion, collateral estoppel, do not operate within a single case. *See IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 26 n.20, 196 P.3d 588. They are "used to describe the binding effect of a decision in a *prior case* on a *second case*." *See id.* (emphases added). The reinstatement order accordingly had no preclusive effect under these doctrines. It was not final, and thus had no res judicata effect on the court's decision to reopen the matter.

¶18 The law of the case doctrine is different. It can operate to preclude relitigation of certain claims or issues within the same case. *Id.* ¶ 26; *see id.* ¶ 26 n.20 ("Because the elements and effects of

---

[2] Rasmussen also argues that OPC was required to prove a violation of a suspension order either (a) in a contempt proceeding or (b) through objection to reinstatement proceedings initiated under RLDD 14-524 or -525—and he asserts that the proceedings in this case were neither. But because the court's decision to hear OPC's post-judgment motion kept the proceeding open, OPC's objections to reinstatement and its arguments that Rasmussen violated the sanctions order certainly occurred in proceedings initiated either under RLDD 14-524 or -525. We reject this argument on that basis, without addressing the broader question.

res judicata and law of the case doctrines may differ, they should be viewed as distinct doctrines."). It "encompasses several different principles related to the binding effect of a decision on subsequent proceedings in the same case." *Id.* ¶ 26. Under this doctrine, "a decision made on an issue during one stage of a case is binding in successive stages of the same litigation." *Id.* (internal quotation marks omitted).

¶19 Yet even this doctrine was not preclusive here. The discretionary or mandatory effect of the law of the case doctrine "[d]epend[s] on the procedural posture of a case at the time the law of the case doctrine is invoked." *Id.* ¶ 27. "As long as the case has not been appealed and remanded, reconsideration of an issue before a final judgment is within the sound discretion of the district court." *Id.*[3] Thus, because the reinstatement order had not been considered on appeal,[4] the district court was well within its discretion when it allowed OPC to pursue its opposition to the reinstatement and to argue that Rasmussen violated the Sanction Order by practicing law while suspended.

C

¶20 Rasmussen's final challenges to his disbarment essentially argue that disbarment was too severe a punishment.[5] We disagree

---

[3] *See Gillmor v. Wright*, 850 P.2d 431, 439 (Utah 1993) (Orme, J., concurring) ("The [law of the case] doctrine is not an inexorable command that rigidly binds a court to its former decisions but rather is an expression of good sense and wise judicial practice." (internal quotation marks omitted)).

[4] The mandate rule—a distinct branch of the law of the case doctrine—controls the preclusive effect of issues already the subject of appellate review. *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 28, 196 P.3d 588. This rule "binds . . . the district court . . . to honor the mandate of the appellate court." *Id.* Thus, under this rule, "a prior decision of a district court becomes mandatory after an appeal and remand." *Id.* This rule is inapplicable here.

[5] At oral argument on this appeal, Rasmussen also appeared to question the propriety of his original suspension, characterizing it as too harsh. That issue is not before us on appeal, however, and we accordingly decline to reach it.

and hold that disbarment was proper under our rules and caselaw.

1

¶21 Because refraining from practicing law was a condition of the stay of the one-year suspension, Rasmussen first asserts that violation of that condition should have resulted in the district court lifting the stay and imposing the full one-year suspension rather than disbarment. We are not persuaded.

¶22 Though the parties and the district court seem to accept that Rasmussen's suspension was for only six months (or six months and a day), that is not the case. Rasmussen was suspended for one year. Part of that year may have been subject to stay, but a stay does not alter the fact that the suspension on its face was for a full year. That is significant under the circumstances. As we have indicated, "[t]o serve as an effective deterrent for further misconduct, the penalty for violating an order of suspension must be more severe than the original suspension." *Utah State Bar v. Doncouse* (*In re Discipline of Doncouse*), 2004 UT 77, ¶ 19, 99 P.3d 837. Thus, Rasmussen's punishment for violating his one-year suspension must do more than impose that suspension.

¶23 And while Rasmussen may have violated the terms of his stay by practicing law, *supra* ¶ 2, he also violated the suspension order itself. After all, inherent in the idea of a suspension order is suspension—abstinence from the practice of law.[6] Thus, the district court's range of disciplinary options was not limited to lifting the stay and imposing the one-year suspension contemplated in the sanction order. Because the entire order was violated—not just the stay—an additional sanction was warranted.

2

¶24 Because the conduct that prompted his disbarment (lying to the court and practicing law while under suspension) is not similar to the conduct that resulted in his original sanction (failure to appear at trial and filing multiple recusal motions), Rasmussen

---

[6] With this in mind, it seems inadvisable for district courts to condition a stay of suspension on the attorney not practicing law. That is what the suspension itself requires. A stay of a suspension should be conditioned on other grounds.

next contends that it was improper for the court to use progressive discipline and to assume that disbarment was the appropriate sanction. Again, we disagree.

¶25 Rasmussen is right on a threshold matter: RLDD 14-606(b) does not control the outcome of this case. That rule provides that a lawyer sanctioned for conduct similar to previously sanctioned conduct should presumptively receive a sanction "one level more severe than the sanction the lawyer previously received." As Rasmussen notes, however, the conduct prompting his original sanction is not similar to the conduct that caused his disbarment, so 14-606(b) had no application to this case.

¶26 We find no error in the district court's decision, however, as it relied not on RLDD 14-606(b) but on RLDD 14-606(a). That provision states that in cases involving prior discipline, a "district court . . . may impose further sanctions upon a lawyer who violates the terms of a prior disciplinary order."[7] This rule clearly applies to Rasmussen. He violated the terms of a previous disciplinary order and so was subject to further sanctions.[8] True, this rule does not prescribe the level of the "further" sanction, like RLDD 14-606(b) does.[9] But disbarment is an appropriate sanction for vio-

---

[7] Though not cited by the district court, RLDD 14-526(e) provides additional support for the district court's decision to ratchet up the level of discipline to disbarment. That rule states that "[w]illful failure to comply with paragraph[] (a) [which states that 'the respondent shall not accept any new retainer or employment as a lawyer in any new case or legal matter,'] . . . shall constitute contempt of court and may be punished as such or by further disciplinary action."

[8] We accordingly reject Rasmussen's argument that the district court erred in applying RLDD 14-606 instead of relying only on RLDD 14-605 to determine the appropriate sanction. In fact, we find 14-605 inapplicable for an additional reason: By its own terms, that rule applies in the absence of "aggravating or mitigating circumstances." Here, the district court specifically listed aggravating circumstances, making RLDD 14-605's recommendations irrelevant.

[9] It also does not mandate that the "further sanction[]" be brought in a separate, new action. *See* RLDD 14-606(a). We recog-

lations involving deceit and the improper practice of law, particularly when our law requires that violation of a suspension order be met with harsher punishment than that imposed in the suspension order.

¶27 Contrary to Rasmussen's assertions, nothing in the RLDD suggests that the terms of 14-606(b) provide a limit on 14-606(a). In other words, the circumstances of the case need not satisfy 14-606(b) in order for a district court to impose escalated sanctions under 14-606(a). The two subsections, though related, are not interdependent. Thus, a district court can, in its discretion, impose a higher-level sanction under RLDD 14-606(a) even if the violation that prompted the first sanction is different from subsequent violations.

¶28 The district court understood this point. It applied 14-606(a) without reference to 14-606(b). It did not feel constrained, for instance, to impose disbarment as a presumptively correct sanction—as it would have if it was employing 14-606(b). Rather, the district court, after considering the circumstances of the violations and rule-imposed "Factors to be considered in imposing

---

nize that, normally, OPC would bring a separate action to impose sanctions on an attorney for a violation not yet the subject of disciplinary action—in this case, for instance, engaging in conduct involving dishonesty or misrepresentation under rule 8.4(c) of the Utah Rules of Professional Conduct or knowingly making a false statement of fact to a tribunal under rule 3.3(a)(1). But because the original suspension order required Rasmussen to refrain from violating any Rules of Professional Conduct during his suspension, that was not necessary here. In essence, violation of another rule was a violation of the suspension order. Moreover, consolidating into one action the discipline for all of Rasmussen's rule violations did not prejudice Rasmussen. He had an opportunity to defend himself to the same extent that he would have had if a separate action had been brought. Thus, nothing in this process violated Rasmussen's due process rights, as he claims. Attorneys that lie to the court and knowingly and purposefully violate a court order should be aware that they risk disbarment. In any event, Rasmussen was disbarred after an opportunity to submit motions and after a hearing on his violations. This is more than sufficient.

sanctions," *see* RLDD 14-604,[10] determined that "the appropriate sanction for violation of the suspension order is the next higher sanction" of disbarment. This was entirely appropriate under the rules.

3

¶29 Finally, Rasmussen challenges the district court's determination that no mitigating factors counseled against disbarment. The disbarment order specifically found that "there are no mitigating circumstances and the aggravating circumstances are clear. Rasmussen blatantly disregarded the Order of the Court for his own financial benefit. The violation was not a single episode but nearly two score."

¶30 Rasmussen disagrees with this assessment and suggests that the following should have been seen as mitigating under RLDD 14-607:[11] (1) he lacked a selfish motive because he was only trying to help his clients and because he was worried about letting his family and employees down and wanted to lessen the impact of his bad judgment on them; (2) he had a clean disciplinary record; (3) he took full responsibility for and freely disclosed his conduct to the court, was cooperative, and expressed remorse; and (4) OPC's delay in challenging his petition and affidavit was unreasonable.

---

[10] These factors include "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." RLDD 14-604.

[11] RLDD 14-607 details "aggravating and mitigating circumstances [that] may be considered and weighed in deciding what sanction to impose." Sample aggravating factors include a prior record of discipline, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, submission of false statements, and substantial experience in the practice of law. RLDD 14-607(a). Sample mitigating factors include the absence of a prior record of discipline, absence of a selfish motive, personal or emotional problems, disclosure of the misconduct prior to the discovery of it, cooperative attitude toward proceedings, interim reform, and remorse. RLDD 14-607(b).

¶31 None of these circumstances are mitigating. Some are aggravating. First, we think it a misstatement for Rasmussen to suggest that he had no selfish motive in continuing to practice law during his suspension. He undoubtedly had some concern for his family and employees, but it is also apparent that his driving concern was the need for money to maintain his lifestyle and his business. This need for money can hardly be considered a mitigating "personal or emotional problem[]" under RLDD 14-607(b)(3), as Rasmussen suggests. If self-serving assertions about wholesome motivations were enough to counter aggravating circumstances supported in the record, our disciplinary rules would be toothless and unenforceable. We accordingly decline to accept Rasmussen's assurances about his selfless motivation as a mitigating circumstance.

¶32 Second, Rasmussen did not have a clean record when arguing before the district court against his disbarment. He had been suspended for one year of practice.

¶33 Third—and perhaps most importantly—we have consistently held that taking responsibility, disclosing wrongdoing to the court, and reforming bad behavior have no mitigating effect when they appear after the misconduct has been discovered and accusations have been made. *See, e.g.*, *In re Discipline of Ince*, 957 P.2d 1233, 1238 (Utah 1998); *see also* RLDD 14-607(b)(5) (listing "full and free disclosure to . . . the disciplinary authority *prior to the discovery of any misconduct*" as a mitigating circumstance (emphasis added)). When a lawyer does these things after he has been caught, he appears more sorry for being caught than for the underlying conduct. *See In re Discipline of Ince*, 957 P.2d at 1238.

¶34 Rasmussen's final proposed mitigating circumstance is similarly unpersuasive. OPC created no unreasonable delay by failing to oppose Rasmussen's reinstatement within RLDD 14-524's ten-day objection period. As discussed above, OPC's failure to do so was a result of confusion, the same confusion that Rasmussen benefitted from when the district court initially upheld his reinstatement. There is accordingly nothing mitigating in the timing of OPC's filings.[12]

---

[12] Even if 14-606(a) were insufficient to support the disbarment sanction, there are sufficient facts in this case to support disbar-

III

¶35  We are not without some sympathy for the plight of Thomas Rasmussen. It could be argued that the initial suspension was too stiff a penalty for the conduct that prompted it. But that question is not before us, and whatever the propriety of the sanction, the appropriate response was not to defy it, much less to cover-up the defiance with subsequent misrepresentations and misleading justifications.

¶36  As is often the case, here the aftermath and cover-up were worse than the initial offense. A suspension order is a serious sanction to be taken seriously. Here it was roundly ignored, and flouted further by a subsequent cover-up. We do not condone such behavior from litigants, and we certainly cannot countenance it from officers of the court. The disbarment stands.

———————

ment under RLDD 14-605, which outlines the standards for imposing disbarment "[a]bsent aggravating or mitigating circumstances." Rasmussen engaged in professional misconduct that benefited himself and deceived the court, causing injury, at the very least, to the legal system. *See* RLDD 14-605(a)(1) (describing conduct meriting disbarment). He also engaged in misconduct that involved dishonesty and deceit that seriously adversely reflects on the lawyer's fitness to practice law. *See* RLDD 14-605(a)(3) (same). Rasmussen's central argument to the contrary—that he substantially complied with the sanctions order, and so did not lie in his affidavit and petition to the district court—is not logical. Practicing law more than three dozen times cannot possibly substantially satisfy an order not to practice law at all.