2011 UT 32

**Larry N. LONG, Petitioner,**

v.

**ETHICS AND DISCIPLINE COMMITTEE OF THE UTAH SUPREME COURT, Respondent.**

Nos. 20091018, 20091019, 20091020.

Supreme Court of Utah.

June 21, 2011.

John A. Snow, Alex B. Leeman, Salt Lake City, for petitioner.

Billy L. Walker, Adam C. Bevis, Salt Lake City, for respondent.

Associate Chief Justice DURRANT, opinion of the Court:

## INTRODUCTION

¶ 1 Attorney Larry Long challenges two orders of public reprimand and an order of admonition issued by the Utah Supreme Court's Ethics and Discipline Committee (the Committee). The Committee imposed the discipline after finding that Mr. Long's conduct in three separate matters violated the Utah Rules of Professional Conduct. In his challenge to this court, Mr. Long argues that the Committee's orders of discipline should be vacated on three grounds. First, he asserts that by failing to provide detailed findings of fact in support of its disciplinary recommendations, the Committee's screening panel violated his due process rights, violated the Utah Rules of Lawyer Discipline and Disability, and deviated from our precedent requiring that we treat attorney discipline cases like administrative agency determinations. Second, he argues that the Committee erred in concluding that his conduct violated rules 1.5(a), 3.1, 5.3(a), and 5.5(a) of the Utah Rules of Professional Conduct. Finally, he contends that the Committee's recommended sanctions are inappropriate.

¶ 2 We hold that the Committee's findings of fact were sufficient under the principles of due process, our rules, and our precedent. We also uphold the Committee's conclusion that Mr. Long violated rules 1.5(a) and 3.1 of the Utah Rules of Professional Conduct. But because we conclude that there is not sufficient evidence to support a finding that Mr. Long's conduct violated rules 5.3(a) or 5.5(a), we vacate the order of public reprimand based on these rule violations. Finally, as to the remaining order of public reprimand and order of admonition, we hold that the Committee's recommended sanctions are appropriate.

## BACKGROUND

¶ 3 This case involves the consolidation of three informal complaints filed with the Utah Office of Professional Conduct (the OPC) against Larry Long, an attorney. Because each complaint involves distinct facts, we address the background for each complaint individually.

### A. The Shepard Complaint

¶ 4 The first complaint, filed by Stephen Shepard, alleged that Mr. Long charged Mr. Shepard an unreasonable fee for legal services and pursued a frivolous lawsuit to recover those legal fees (the Shepard Matter). Mr. Shepard first learned of Mr. Long's services when Mr. Long mailed him correspondence about a free legal consultation with "L. Long Lawyers." After receiving this correspondence, Mr. Shepard and Mr. Long met the day before Mr. Shepard was scheduled for an initial court appearance for a DUI and other related charges. Following their meeting, Mr. Long agreed to represent Mr. Shepard on an emergency basis for a hearing the next day. Mr. Shepard paid Mr. Long one hundred dollars for this service.

¶ 5 After the initial court appearance, Mr. Shepard signed a flat fee agreement for $6,600, under which Mr. Long agreed to represent Mr. Shepard "up to and including the pre-trial conference or preliminary hearing and subsequent sentencing upon entry of a plea." The agreement also provided that the $6,600 fee would "be fully earned [ ] once substantial services have been performed by [Mr. Long]."

¶ 6 Approximately two days after the initial court appearance, Mr. Shepard contacted Mr. Long's office to inform Mr. Long that he had decided to retain another attorney. Although Mr. Shepard contacted Mr. Long's office, Mr. Long did not learn that Mr. Shepard had hired another attorney until Mr. Long attended a hearing in Mr. Shepard's case a few weeks later. After seeing Mr. Shepard's new attorney, Mr. Long ceased working on Mr. Shepard's case. Mr. Shepard did not pay Mr. Long for services beyond the initial court appearance.

¶ 7 Six months after Mr. Shepard terminated Mr. Long's representation, Mr. Long's office sent the flat fee agreement to a collection agency. The collection agency then filed a lawsuit against Mr. Shepard for $7,775.34, the full amount of the flat fee agreement plus interest. After receiving notice of the lawsuit, Mr. Shepard discussed the collection action with an attorney who tried to negotiate a settlement.

¶ 8 As a result of this lawsuit, Mr. Shepard filed a complaint with the OPC. The OPC mailed Mr. Long a Notice of Informal Complaint and provided Mr. Long with an opportunity to respond to the allegations of misconduct. After Mr. Long provided a response, the OPC conducted a preliminary investigation and provided Mr. Long with a copy of its findings. The OPC's investigation found that Mr. Long's actions violated the rules of professional conduct. As a re-

sult of this finding, the OPC referred the Shepard Matter to the Committee.[1] Pursuant to the Utah Rules of Lawyer Discipline and Disability (the RLDD), part of the Supreme Court's Rules of Professional Practice, the Committee's screening panel (the Screening Panel) held a hearing at which Mr. Long and Mr. Shepard testified and presented evidence.[2]

¶ 9 At the hearing, Mr. Shepard stated that he did not believe that he had hired Mr. Long to represent him. In response, Mr. Long testified that he had spent a total of six hours working on Mr. Shepard's case; and that this would constitute approximately $1,500 in legal fees. Additionally, Mr. Long stated that when the collection agency contacted him about a possible settlement with Mr. Shepard, he initially told them that he would agree to a settlement amount of $1,500. Mr. Long also testified that he instructed the collection agency to terminate the lawsuit after Mr. Shepard contacted the OPC. At the hearing, Mr. Long admitted that it was "absolutely not" reasonable for an attorney to charge $6,600 for six hours of work.

¶ 10 Based on this evidence, the Screening Panel concluded that Mr. Long had violated rules 1.5(a),[3] 3.1,[4] 7.1,[5] 7.5(d),[6] and 8.4[7] of the Utah Rules of Professional Conduct. The Screening Panel made a recommendation to the Committee Chair that Mr. Long receive a nonpublic admonition.[8] In recommending

---

1. According to the Utah Rules of Lawyer Discipline and Disability, "[f]ollowing a preliminary investigation by OPC's counsel to ascertain whether the informal complaint warrants further action, the OPC may, among other things, refer the complaint to a screening panel for additional review." *Bowen v. Utah State Bar*, 2008 UT 5, ¶ 9, 177 P.3d 611.

2. A screening panel is charged to "review all informal complaints referred to it by OPC counsel, including all the facts developed by the informal complaint, answer, investigation and hearing, and the recommendations of OPC counsel." RLDD 14–510(b)(1).

3. "A lawyer shall not make an agreement for, charge or collect an unreasonable fee . . . ." Utah R. Prof'l Conduct 1.5(a).

4. "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein,

unless there is a basis in law and fact for doing so that is not frivolous. . . ." *Id.* 3.1.

5. "A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services." *Id.* 7.1.

6. "Lawyers may state or imply that they practice in a partnership or other organization *only when that is the fact.*" *Id.* 7.5(d) (emphasis added).

7. "It is professional misconduct for a lawyer to[ ] . . . violate or attempt to violate the Rules of Professional Conduct. . . ." *Id.* 8.4(a).

8. After a screening panel conducts a hearing, it may recommend that the informal complaint be referred to the Committee Chair with an accompanying recommendation that the respondent attorney receive a nonpublic admonition or a public reprimand. *See* RLDD 14–510(b)(7).

an admonition, the Screening Panel considered it a mitigating factor that Mr. Shepard did not actually pay Mr. Long an unreasonable fee.

¶ 11 Mr. Long filed an exception to the Committee Chair, arguing that the Screening Panel's recommendation was not supported by substantial evidence and that its findings of fact were insufficient to support its conclusions. The Committee Chair held a hearing at which Mr. Long presented evidence. The Committee Chair rejected Mr. Long's arguments, upheld the Screening Panel's recommendation, and imposed the sanction of a nonpublic admonition.

## B. The Nelson Complaint

¶ 12 In the second complaint, Greg Nelson alleged that Mr. Long had failed to adequately supervise his nonlawyer assistant, Joe Scheeler, and that Mr. Scheeler had engaged in the unauthorized practice of law (the Nelson Matter). Mr. Nelson contacted Mr. Long's office on April 18, 2007, seeking legal representation for a friend, David Merritt, who was incarcerated for allegedly violating a protective order. Mr. Nelson met with Mr. Scheeler, a nonlawyer employee of Mr. Long's firm, paid a retainer fee of $750, and signed a flat fee agreement for Mr. Long to represent Mr. Merritt. Although Mr. Nelson paid for legal representation, Mr. Long did not appear at the initial hearing in Mr. Merritt's case. When Mr. Long did not appear at a second hearing in Mr. Merritt's case, Mr. Scheeler told Mr. Nelson that he would handle the matter himself "as a mediator." Two days later, Mr. Nelson paid an additional $1,100 to resolve Mr. Merritt's criminal case.

¶ 13 On May 2, 2007, Mr. Long received a letter from an attorney who had been hired by Debbi Smith, the individual who filed the protective order in Mr. Merritt's criminal case. The letter stated that Ms. Smith and Mr. Long's client, Mr. Merritt, needed to resolve an issue concerning property division but could not contact one another in light of the protective order. Three weeks after Mr. Long received this letter, Mr. Merritt signed a flat fee agreement in which Mr. Long agreed to represent him.

¶ 14 On June 1, 2007, Mr. Scheeler conducted a mediation between Mr. Merritt and Ms. Smith. Mr. Scheeler then drafted a settlement agreement that addressed the division of personal property between the parties. Although the settlement agreement listed Mr. Long as Mr. Merritt's attorney, Mr. Long did not participate in the mediation, nor did he participate in drafting the settlement agreement. In a letter dated June 11, 2007, Mr. Long informed the prosecutor in Mr. Merritt's criminal case that Mr. Merritt and Ms. Smith had voluntarily completed a mediation with Mr. Scheeler and were working on a settlement agreement.

¶ 15 Mr. Nelson subsequently filed a complaint with the OPC. The OPC mailed Mr. Long a Notice of Informal Complaint and provided Mr. Long with an opportunity to respond to the allegations of misconduct. After Mr. Long provided a response, the OPC conducted a preliminary investigation and provided Mr. Long with a copy of its findings. As part of the OPC investigation, Mr. Nelson stated that, based on his interactions with Mr. Scheeler, he thought Mr. Scheeler was an attorney. The OPC investigation also concluded that Mr. Long's website listed Mr. Scheeler as a "legal mediator." After completing its investigation, the OPC found that Mr. Long's actions violated the rules of professional conduct. The OPC then referred the Nelson Matter to the Committee. The Screening Panel held a hearing at which Mr. Long testified and presented evidence. At the hearing, Mr. Long admitted that he first met with Mr. Merritt on June 19, 2007, after the mediation. Mr. Long also stated that pursuant to Mr. Scheeler's employment agreement, Mr. Scheeler was to comply with the Utah Rules of Professional Conduct and to notify clients that he was not an attorney.

¶ 16 Based on this evidence, the Screening Panel concluded that Mr. Long's actions violated rules 5.3(a),[9] 5.5(a),[10] and 8.4(a) of the

---

9. "With respect to a nonlawyer employed ... with a lawyer ... a lawyer [must] make reason-

able efforts to ensure that the [lawyer's] firm has in effect measures giving reasonable assurance

Utah Rules of Professional Conduct. The Screening Panel recommended that Mr. Long receive a public reprimand. Mr. Long subsequently filed an exception to the Committee Chair, arguing that the Screening Panel's recommendation was not supported by substantial evidence and that its findings of fact were insufficient to support its conclusions. The Committee Chair held a hearing at which Mr. Long presented evidence.[11] The Committee Chair rejected Mr. Long's arguments, upheld the Screening Panel's recommendation, and imposed the sanction of a public reprimand.

### C. The Henriod Complaint

¶ 17 The third complaint filed against Mr. Long stemmed from a letter filed by Judge Stephen L. Henriod, alleging that Mr. Long charged several clients unreasonable fees for the services he performed (the Henriod Matter). In his letter to the OPC, Judge Henriod stated that he believed that Mr. Long charged two clients—Annallicia Vantreese and Jose Luis Perez–Hernandez—unreasonable fees by performing insubstantial work before withdrawing from each case.[12] Because Judge Henriod did not notarize his letter, the OPC proceeded with its investigation as the official complainant.[13]

¶ 18 Ms. Vantreese signed a flat fee agreement with Mr. Long for legal services related to a charge of possession with intent to distribute, a second degree felony. The flat fee agreement, which identified Mr. Long's firm as "L. Long Lawyers," provided that Ms. Vantreese would pay Mr. Long $8,910 for his services "up to and including the pre-trial conference or preliminary hearing and subse-

quent sentencing upon entry of a plea." The docket in Ms. Vantreese's case indicated that Mr. Long appeared at two pretrial conferences, during which he requested continuances. After these continuances, Ms. Vantreese was accepted into drug court. Mr. Long subsequently appeared at another pretrial conference and requested another continuance. After this continuance, Mr. Long appeared at a pretrial hearing, a drug court conference, and a plea hearing, where Ms. Vantreese pleaded guilty. Mr. Long did not appear at any subsequent drug court hearings, and Ms. Vantreese's case was dismissed when she completed drug court. Ms. Vantreese paid Mr. Long $8,900 for his legal services.

¶ 19 Mr. Perez–Hernandez signed a flat fee agreement with Mr. Long for legal services related to two drug charges. The flat fee agreement provided that Mr. Perez–Hernandez would pay Mr. Long $10,000 for legal services "up to and including the pre-trial conference or preliminary hearing and subsequent sentencing upon entry of a plea." In Mr. Perez–Hernandez's case, Mr. Long made an initial appearance; appeared at a roll-call; filed an appearance of counsel, a request for discovery, and a motion to preserve evidence; informed the court that Mr. Perez–Hernandez had been accepted into drug court; and appeared at two change of plea hearings. Mr. Long did not appear at any subsequent drug court hearings. Mr. Long collected $7,750 from Mr. Perez–Hernandez for these legal services.

¶ 20 Because Judge Henriod was concerned that Mr. Long's fees in these matters were unreasonable, he sent his letter to the

---

that the [nonlawyer's] conduct is compatible with the professional obligations of the lawyer...." Utah R. Prof'l Conduct 5.3(a).

**10.** "A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, *or assist another in doing so.*" *Id.* 5.5(a) (emphasis added).

**11.** At this hearing, the Committee Chair believed that Mr. Long conceded that Mr. Scheeler's conduct amounted to the unauthorized practice of law. Mr. Long disputes that he made such a concession; because there are no transcripts of this hearing, the record does not reflect whether such a concession was made.

**12.** Judge Henriod's letter to the OPC identified three clients Mr. Long allegedly overcharged. The Screening Panel ultimately recommended discipline for Mr. Long's representation of only Ms. Vantreese and Mr. Perez–Hernandez. Thus, we will limit the facts to Mr. Long's representation of these two clients.

**13.** RLDD 14–510(a)(2) requires that, unless the OPC serves as the complainant, informal complaints must "be notarized and contain a verification attesting to the accuracy of the information contained in the complaint."

OPC. The OPC mailed Mr. Long a Notice of Informal Complaint and provided Mr. Long with an opportunity to respond to the allegations of misconduct. After Mr. Long provided a response, the OPC conducted a preliminary investigation and provided Mr. Long with a copy of its findings. The OPC found that Mr. Long's actions violated the rules of professional conduct and referred the Henriod Matter to the Committee. The Screening Panel held a hearing at which Mr. Long testified and presented evidence.

¶ 21 At the hearing, Mr. Long testified that he had performed additional work for Ms. Vantreese and Mr. Perez–Hernandez that was not reflected in the court dockets. In support, Mr. Long provided the Screening Panel with a narrative "accounting" of the work he performed in both cases. This "accounting" was created after the OPC complaint was initiated and consisted of Mr. Long's thoughts and recollection of his work on each case. According to the narrative "accounting," Mr. Long performed forty-five hours of work for Ms. Vantreese and fifty to sixty hours of work for Mr. Perez–Hernandez. Mr. Long also submitted an affidavit by another attorney stating that Mr. Long's fees were consistent with other attorney fees for cases in which similar charges had been filed. At the hearing, Mr. Long conceded that although he used the name "L. Long Lawyers" on his flat fee agreements, he was a solo practitioner at all relevant times in this case.

¶ 22 Based on this evidence, the Screening Panel concluded that Mr. Long's actions violated rules 1.5(a), 7.1, 7.5(d), and 8.4(a) of the Utah Rules of Professional Conduct. The Screening Panel recommended that Mr. Long receive a public reprimand. Mr. Long filed an exception to the Committee Chair, arguing that the Screening Panel's recommendation was not supported by substantial evidence and that its findings of fact were insufficient to support its conclusions. The Committee Chair held a hearing at which Mr. Long presented evidence. The Committee Chair rejected Mr. Long's arguments, upheld the Screening Panel's recommendation, and imposed the sanction of a public reprimand.

¶ 23 Mr. Long now challenges the Committee's actions to this court.[14] We have authority to hear this challenge pursuant to article VIII, section 4 of the Utah Constitution.[15]

## STANDARD OF REVIEW

■ ¶ 24 "We review interpretations of our [r]ules of [p]rofessional [p]ractice[, which govern attorney discipline,] for correctness."[16] "As to the discipline actually imposed, our constitutional responsibility requires us to make an independent determination as to its correctness."[17]

## ANALYSIS

¶ 25 Mr. Long argues that the Committee's orders of discipline should be vacated on

---

14. On November 1, 2009, we amended the RLDD to provide for a procedure by which an attorney may request judicial review of a final Committee determination. *See* RLDD 14–510(f). Prior to this amendment, attorneys challenging a Committee's final order were required to file a petition for extraordinary relief pursuant to rule 65B of the Utah Rules of Civil Procedure. *See Bowen*, 2008 UT 5, ¶ 10, 177 P.3d 611.

In this case, the complaints against Mr. Long were filed in 2007 and 2008, and the Screening Panel's hearings were held in February 2009. Mr. Long filed an exception to the Screening Panel's recommendations, and the Committee Chair held the exception hearings on October 28, 2009. The Committee Chair issued his decisions and the Committee's final orders of discipline in November 2009, after the RLDD had been amended. Mr. Long challenged the Committee's final orders in December 2009.

Given the timing in which Mr. Long filed his challenge, it is unclear whether Mr. Long's challenge comes to us as a direct appeal under the RLDD or as a petition for extraordinary relief. But because we have jurisdiction over this case regardless of its classification as a direct appeal or petition for extraordinary relief, we need not resolve this issue.

15. Utah Const. art. VIII, § 4 (stating that "[t]he Supreme Court ... shall govern the practice of law, including admission to practice law and the conduct and discipline of persons admitted to practice law").

16. *Nemelka v. Ethics & Discipline Comm.*, 2009 UT 33, ¶ 9, 212 P.3d 525.

17. *In re Discipline of Crawley*, 2007 UT 44, ¶ 17, 164 P.3d 1232 (internal quotation marks omitted).

three grounds. First, he contends that the Screening Panel violated his right to due process, the RLDD, and our precedent by failing to provide detailed findings of fact in support of its recommendations. Second, he argues that the Committee erred in concluding that his actions violated rules 1.5(a), 3.1, 5.3(a), and 5.5(a) of the Utah Rules of Professional Conduct.[18] Finally, he asserts that the Committee's recommended sanctions are inappropriate.

¶ 26 We hold that the Committee's findings of fact were sufficient under the principles of due process, our rules, and our precedent. We also uphold the Committee's conclusion that Mr. Long violated rules 1.5(a) and 3.1 of the Utah Rules of Professional Conduct. But because we conclude that there is not sufficient evidence to support a finding that Mr. Long's conduct violated rules 5.3 or 5.5, we vacate the order of public reprimand based on these rule violations. Finally, as to the remaining order of public reprimand and order of admonition, we hold that the Committee's recommended sanctions are appropriate.

## I. THE SCREENING PANEL DID NOT VIOLATE THE PRINCIPLES OF DUE PROCESS, THE RLDD, OR OUR PRECEDENT BY FAILING TO PROVIDE PARTICULARIZED FINDINGS OF FACT TO SUPPORT ITS RECOMMENDATIONS

■ ¶ 27 Mr. Long argues that the Screening Panel's recommendations should be vacated because the panel failed to provide detailed findings of fact. He contends that the failure to provide particularized findings of fact violates (A) his due process rights, (B) the RLDD, and (C) our precedent stating that we treat attorney discipline proceedings like administrative agency determinations. We find these arguments unpersuasive.

### A. The Screening Panel Did Not Violate Mr. Long's Due Process Rights by Failing to Provide Detailed Findings of Fact When Recommending an Admonition or a Public Reprimand

¶ 28 Mr. Long argues that the Screening Panel's failure to make particularized findings of fact in its recommendation for discipline deprived him of due process. Specifically, he argues that without detailed findings of fact, he was deprived of a meaningful opportunity to challenge the Screening Panel's recommendations to the Committee Chair. We disagree.

■■ ¶ 29 It is undisputed that an attorney is entitled to due process in disciplinary actions.[19] The right to due process requires that an individual receive adequate notice of the charges "and an opportunity to be heard in a meaningful way." [20] But the level of due process required depends on the context of the proceeding. For example, we have explained that "due process is flexible and calls for the procedural protections that the given situation demands." [21] In the context of informal attorney discipline, we have stated that the procedures listed in the RLDD are sufficient to afford due process.[22]

¶ 30 Although the Screening Panel's written recommendations were somewhat conclusory, Mr. Long was still fully aware of the allegations and evidence presented against

---

**18.** In his briefing, Mr. Long argues that (1) there is not substantial evidence to establish that his actions violated the rules of professional conduct and (2) the Committee misinterpreted the rules because his actions did not violate the rules of professional conduct. Because these arguments are substantially identical, we address them together.

**19.** *In re Discipline of Sonnenreich*, 2004 UT 3, ¶ 37, 86 P.3d 712 (citing, inter alia, *In re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968)).

**20.** *Id.*

**21.** *Id.* (internal quotation marks omitted).

**22.** *See In re Discipline of Harding*, 2004 UT 100, ¶¶ 20–21, 104 P.3d 1220 (stating that the principles of due process are satisfied in the context of informal attorney discipline because the RLDD provides that the attorney has prior notice of the charges; notice of the hearing; the right to be present at the hearing; the right to appear, present testimony, and offer witnesses; the right to present an oral argument with respect to the complaint; the right to receive the screening panel's conclusions; and the opportunity to seek review from the Committee Chair).

him such that he was able to mount a meaningful challenge. Specifically, Mr. Long knew of the facts forming the basis for each alleged violation of the rules of professional conduct because he received a copy of the informal complaints and the OPC's findings for each matter. In addition, Mr. Long was present and participated in the Screening Panel's hearings and was therefore aware of the allegations and the evidence presented against him.

¶ 31 The Screening Panel's recommendations also provided Mr. Long with sufficient information to challenge the recommendations to the Committee Chair. Each recommendation identified the client Mr. Long represented, the rule he violated during that representation, and how his conduct violated that rule. For example, even in the Screening Panel's recommendation in the Henriod Matter—the most conclusory of the panel's findings of fact—the panel specified that the conduct involved Mr. Long's representation of Ms. Vantreese, that Mr. Long violated rule 1.5(a) of the Utah Rules of Professional Conduct, and that he violated this rule by "charg[ing] excessive fees." With all of this information, Mr. Long was capable of making a meaningful challenge of the panel's findings to the Committee Chair.

¶ 32 Although the findings of fact could have been more particular, the lack of detailed findings did not deprive Mr. Long of the ability to meaningfully challenge his discipline. Mr. Long was given adequate notice of the alleged violations and had a meaningful opportunity to challenge those allegations. Accordingly, we hold that Mr. Long was not denied due process.

### B. The Screening Panel Did Not Violate the RLDD by Failing to Provide Detailed Findings of Fact

■ ¶ 33 Mr. Long also argues that the RLDD require screening panels to provide particularized findings of fact in support of their recommendations. We disagree.

¶ 34 RLDD 14–510(b)(7) [23] requires that a screening panel's recommendation provide "the basis upon which the screening panel has concluded . . . that the respondent [attorney] should be admonished or publicly reprimanded." [24] Contrary to Mr. Long's argument, there is nothing in the language of the rule that requires detailed findings of fact. Instead, this rule requires only that a screening panel identify the basis or grounds for its recommendation of admonishment or public reprimand. The permissible bases for such a recommendation are found in RLDD 14–509, which states,

It shall be a ground for discipline for a lawyer to:

(a) violate the Rules of Professional Conduct;

(b) willfully violate a valid order of a court or a screening panel imposing discipline;

(c) be publicly disciplined in another jurisdiction;

(d) fail to comply with the requirements of Rule 14–526(e); or

(e) fail to notify the OPC of public discipline in another jurisdiction . . . . [25]

¶ 35 In this case, the Screening Panel's recommendation in each matter specifically identified the rules of professional conduct that Mr. Long had violated. In addition, the Screening Panel stated how Mr. Long's conduct violated each rule. For example, in the Shepard Matter, the Screening Panel stated that Mr. Long violated rule 1.5(a) "[b]y charging Mr. Shepard an unreasonable fee for services rendered . . . [because] Mr. Long's fee of $6,600 was unreasonable given that Mr. Shepard paid him for one hearing and then decided not to hire him." In the Nelson Matter, the Screening Panel stated that Mr. Long violated rule 5.5(a)

[b]y failing to adequately supervise Mr. Scheeler's activities to ensure that Mr.

---

23. RLDD 14–510 was amended effective November 1, 2009. As part of the amendments, rule 14–510(5)(D) regarding admonitions and rule 14–510(5)(E) regarding public reprimands were consolidated into one section, which is now rule 14–510(b)(7). Because the relevant language of the rule is unchanged, we cite the newly amended rule for convenience.

24. RLDD 14–510(b)(7).

25. *Id.* 14–509.

Scheeler was not engaging in the Unauthorized Practice of Law and by allowing Mr. Scheeler to hold himself out as a lawyer ... [because] [he allowed all of Mr. Nelson's contacts to be with Mr. Scheeler such that] Mr. Nelson was led to believe that Mr. Scheeler was an attorney[, and] Mr. Long allowed Mr. Scheeler to ... contact [the] opposing party and conduct mediation proceedings [and then] draft[ ] a settlement agreement that Mr. Long ratified.

And in the Henriod Matter, the Screening Panel stated that Mr. Long violated rule 1.5(a) by charging "excessive fees for the work he completed" for Ms. Vantreese and Mr. Perez–Hernandez. Because the Screening Panel identified the rule violated and how Mr. Long's conduct amounted to a violation, the recommendations all adequately identified the bases for recommending an admonition or a public reprimand.

¶ 36 Furthermore, in rejecting Mr. Long's argument that particularized findings of fact are necessary, we note that the nature of a screening panel's role in attorney discipline matters makes such a requirement impractical or infeasible. Screening panels are made up of volunteer attorneys and have only limited powers. For example, screening panels can dismiss cases, issue letters of caution, refer cases to the Committee Chair for recommendations of low-level discipline, or direct the OPC to file a formal case against the respondent for further proceedings in the district court.[26] This system was specifically designed to promote speed and efficiency in low-level attorney discipline cases. Accordingly, a requirement that a screening panel state detailed factual findings would be unnecessarily burdensome in light of the limited function of a screening panel's role in the proceedings.

¶ 37 For the foregoing reasons, we hold that the Screening Panel did not violate the RLDD by failing to provide particularized

findings of fact when recommending an admonition or a public reprimand.

### C. The Screening Panel's Recommendations Do Not Conflict With Our Precedent

¶ 38 Mr. Long also argues that the Screening Panel's failure to provide detailed findings of fact conflicts with our precedent. In support of this position, he notes that in *In re Discipline of Schwenke*, we stated that, in attorney discipline cases, "[w]e treat factual findings ... much the same as findings of administrative agencies and sustain them so long as they are supported by substantial evidence."[27] Based on this statement, Mr. Long contends that because particularized findings of fact are necessary in administrative agency determinations, such findings are necessary in a screening panel's recommendation. We disagree for two reasons.

¶ 39 First, contrary to Mr. Long's assertion, our statement in *Schwenke* addressed only the deference that we afford findings of fact. Specifically, we stated that, as in agency determinations, findings of fact will be sustained "so long as they are supported by substantial evidence."[28] Consistent with this deference, we have stated that in formal disciplinary matters, where a trial court makes detailed findings of fact, "we review the trial court's findings of fact under the clearly erroneous standard."[29] Because we addressed only the deference afforded to findings of fact, our statement should not be interpreted so broadly as to require the evidentiary detail in our informal disciplinary process that we need to review administrative agency determinations. And as explained in Part I.B. of this opinion, detailed findings of fact are not required in our informal disciplinary process.

¶ 40 Second, Mr. Long's analogy that our review of attorney disciplinary matters should be equivalent to our review of administrative agency determinations is incorrect.[30]

---

26. *Id.* 14–510(b)(6).

27. 849 P.2d 573, 576 (Utah 1993).

28. *Id.*

29. *In re Discipline of Crawley*, 2007 UT 44, ¶ 17, 164 P.3d 1232 (internal quotation marks omitted).

30. *Compare Milne Truck Lines, Inc. v. Pub. Serv. Comm'n*, 720 P.2d 1373, 1378–80 (Utah 1986) (stating that in reviewing an agency determina-

In the context of administrative agencies, the power to make decisions belongs to the administrative agency, as delegated by the Legislature.[31] Thus, when we review an agency's decision, the agency is charged with deciding the ultimate issue, and it is our role to ensure that the agency's decision conforms with existing law.[32] Because we do not have the power to decide the issue, but merely to review the agency's decision, we require that agencies "make subsidiary findings in sufficient detail ... [so] as to demonstrate that there is a logical and legal basis for the ultimate conclusions." [33]

¶ 41 In attorney discipline cases, the power to sanction attorneys is vested in this court by the Utah Constitution.[34] As part of that power, we have created the RLDD and the Utah Rules of Professional Conduct to guide attorney discipline. We have also delegated the power to impose sanctions to the Committee and, in issuing attorney discipline, the Committee acts as our agent.[35] Because we are charged with the power to discipline attorneys, conclusory findings of fact do not present the same difficulty in the attorney discipline context as they do in the administrative context. Thus, because we are charged with attorney disciplinary matters, we can make a determination as to whether a Committee's recommendation is appropriate. Based on this different role, we reject Mr. Long's argument that our precedent requires screening panels to make the same detailed findings of fact that are necessary when we review administrative agency determinations.

¶ 42 In sum, we hold that, in omitting particularized findings of fact to support its

recommendations, the Screening Panel's action did not violate Mr. Long's due process rights, did not violate the RLDD, and did not conflict with this court's precedent.

## II. THE COMMITTEE DID NOT ERR IN CONCLUDING THAT MR. LONG'S ACTIONS VIOLATED RULE 1.5(A) AND RULE 3.1, BUT IT ERRED IN FINDING THAT MR. LONG'S CONDUCT VIOLATED RULE 5.3(A) AND RULE 5.5(A) OF THE UTAH RULES OF PROFESSIONAL CONDUCT

¶ 43 Having concluded that the Screening Panel's recommendations did not violate the principles of due process, did not violate the RLDD, and did not conflict with our precedent, we next address Mr. Long's argument that the Committee erred in finding that his actions violated the rules of professional conduct. Specifically, Mr. Long asserts that the Committee erred in concluding that he violated (A) rule 1.5(a), (B) rule 3.1, and (C) rules 5.3(a) and 5.5(a).[36]

¶ 44 We conclude that the Committee did not err in finding violations of rule 1.5(a) and rule 3.1. The Committee did err, however, in finding that Mr. Long's conduct violated rule 5.3(a) and rule 5.5(a) of the Utah Rules of Professional Conduct.

### A. Rule 1.5(a)

■ ¶ 45 Rule 1.5(a) states that "[a] lawyer shall not make an agreement for, charge

---

31. *See Milne Truck Lines,* 720 P.2d at 1378–80; *see also Robinson v. State,* 2001 UT 21, ¶ 14, 20 P.3d 396 (stating that "[b]ecause the constitution vests the legislative power in the legislature, administrative agencies may only effect policy mandated by statute").

32. *Milne Truck Lines,* 720 P.2d at 1378–79.

33. *Id.* at 1378.

34. Utah Const. art. VIII, § 4.

35. *See, e.g., In re Discipline of Johnson,* 2001 UT 110, ¶ 17, 48 P.3d 881 (recognizing that when a district court imposes sanctions on an attorney, the court is acting as our agent); *see also* RLDD 14–510(b)–(e).

36. Both rule 5.3(a) and rule 5.5(a) involve the issue of whether Mr. Scheeler was engaged in the unauthorized practice of law. Because these rules are closely factually connected, we address them together.

---

tion "[i]t is, of course, the prerogative of the [agency] to decide the ultimate issue" and it is the court's role to ensure that the agency's decision conforms with existing law), *with In re Discipline of Harding,* 2004 UT 100, ¶ 18, 104 P.3d 1220 (stating that "attorney discipline proceedings, being the exclusive province of this court, are conducted under the rules and directions we give").

or collect an unreasonable fee." [37] In determining whether a fee is unreasonable, the Committee may consider the following factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly;

> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

> (3) the fee customarily charged in the locality for similar legal services;

> (4) the amount involved and the results obtained;

> (5) the time limitations imposed by the client or by the circumstances;

> (6) the nature and length of the professional relationship with the client;

> (7) the experience, reputation and ability of. the lawyer or lawyers performing the services; and

> (8) whether the fee is fixed or contingent.[38]

These factors do not represent an exclusive list, and each factor may not be relevant in every case.[39]

¶ 46 The Committee concluded that Mr. Long violated rule 1.5(a) by charging unreasonable fees in both the Shepard Matter and the Henriod Matter. In the Shepard Matter, the Committee found that Mr. Long charged Mr. Shepard an unreasonable fee by bringing the debt collection action for $7,775.34 after Mr. Long performed only six hours of work. In the Henriod Matter, the Committee stated that Mr. Long charged and collected excessive fees for the legal services he performed for Ms. Vantreese and Mr. Perez–Hernandez. Mr. Long challenges both findings.

37. Utah R. Prof'l Conduct 1.5(a).

38. *Id.*

39. *See id.* cmt. [1].

40. *See* Utah State Bar Ethics Advisory Opinion 136 (1993).

41. *See id.*

### 1. The Shepard Matter

¶ 47 First, Mr. Long argues that the Committee erred in concluding that his conduct violated rule 1.5(a) in the Shepard Matter because he did not actually make an agreement for, charge, or collect an unreasonable fee. He contends that he did not make an agreement for an unreasonable fee because his initial fee agreement was reasonable in light of the services he promised to perform. Also, Mr. Long contends that the one hundred dollars he collected from Mr. Shepard was a reasonable amount for the legal services he actually performed. And he argues that he did not charge an unreasonable fee because flat fee agreements are not per se violations of rule 1.5(a).[40]

¶ 48 While Mr. Long may be correct regarding the reasonableness of the fee at the time the agreement was made and the reasonableness of the fee he collected, he overlooks the fact that he charged, meaning demanded payment for, an unreasonable fee. Although flat fee agreements are not per se violations of rule 1.5(a), the fee that is actually charged must still be evaluated for reasonableness in light of the factors set out in the rule.[41] In this case, Mr. Long admitted that it was "absolutely not" reasonable to charge $6,600 for his six hours of work. But by bringing the collection action against Mr. Shepard, Mr. Long charged or demanded that Mr. Shepard pay an unreasonable fee. The Committee therefore did not err in finding that Mr. Long's conduct violated rule 1.5(a).

### 2. The Henriod Matter

¶ 49 Second, Mr. Long argues that the Committee erred in finding a violation of rule 1.5(a) in the Henriod Matter because the finding is not supported by substantial evidence.[42] Specifically, he asserts that his nar-

42. In his brief, Mr. Long also argued that the Committee erred in finding that his conduct violated rule 1.5(a) because the Screening Panel stated that Mr. Long's fees were "excessive" but the rule only sanctions fees that are "unreasonable." We reject Mr. Long's argument because, when read in context, it is clear that by calling his fees "excessive," the panel meant that Mr. Long's fees exceeded a reasonable amount.

rative "accounting" explained the work he performed and that his affidavit demonstrated that his fees were "customarily charged in the locality." Contrary to Mr. Long's argument, we conclude that there is substantial evidence supporting the Committee's finding.

■■■ ¶ 50 "Substantial evidence exists when the factual findings support *more than a mere scintilla of evidence* ... though something less than the weight of the evidence." [43] Thus, a "decision meets the substantial evidence test when a reasonable mind might accept as adequate the evidence supporting the decision." [44]

¶ 51 With this standard in mind, we turn to the evidence presented to the Committee. Evidence in the record—such as the court dockets—showed that Mr. Long performed minimal services for both Ms. Vantreese and Mr. Perez–Hernandez. Specifically, the docket in Ms. Vantreese's case indicated that Mr. Long requested continuances at two pretrial conferences before Ms. Vantreese was accepted into drug court. Mr. Long subsequently appeared at another pretrial conference, a pretrial hearing, a drug court conference, and a plea hearing, where Ms. Vantreese pleaded guilty. Mr. Long then collected $8,900 for his services. And the docket in Mr. Perez–Hernandez's case indicated that Mr. Long made an initial court appearance; appeared at a roll-call; filed an appearance of counsel, a request for discovery, and a motion to preserve evidence; informed the court that Mr. Perez–Hernandez had been accepted into drug court; and appeared at two change of plea hearings. Mr. Long then collected $7,750 from Mr. Perez–Hernandez for these legal services.

¶ 52 Although Mr. Long submitted his narrative "accounting" to the Committee, he did not provide contemporaneous records showing what services—outside of those reflected in the court dockets—that he actually performed. And because the "accounting" was only Mr. Long's recollection of the work he performed, a reasonable mind might not give this "accounting" much weight. Furthermore, although the affidavit was evidence that Mr. Long's flat fee agreement might have been reasonable for the services Mr. Long promised, the affidavit did not speak to whether the fee collected or charged was reasonable in light of the services Mr. Long actually performed.

¶ 53 Based on the evidence in the docket and the minimal rebuttal evidence Mr. Long presented, there is substantial evidence that Mr. Long's fees were unreasonable in light of the labor and services he performed. Thus, a reasonable mind might find that Mr. Long violated rule 1.5(a).

¶ 54 For the foregoing reasons, we conclude that the Committee did not err in finding that Mr. Long's conduct violated rule 1.5(a) in both the Shepard Matter and the Henriod Matter.

### B. Rule 3.1

■■ ¶ 55 Rule 3.1 provides that an attorney "shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous...." [45] The Committee found that Mr. Long violated rule 3.1 in the Shepard Matter by filing a debt collection lawsuit demanding $7,775.34 when Mr. Long "knew that he had not earned this fee."

¶ 56 Mr. Long argues that the Committee's finding is erroneous because the collection action was not frivolous. Specifically, Mr. Long asserts that his claim was appropriate because he was entitled to the full fee under the flat fee agreement or, in the alternative, he was entitled to recover payment for the six hours that he worked. We find Mr. Long's arguments unpersuasive.

¶ 57 As an initial matter, we again note that flat fee agreements are subject to the standards of rule 1.5(a). Therefore, Mr. Long's assertion that the flat fee agreement entitled him to bring the lawsuit is undermined by his own admission that it was "ab-

**43.** *Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶ 35, 164 P.3d 384 (alteration in original) (emphasis added) (internal quotation marks omitted).

**44.** *Id.* (internal quotation marks omitted).

**45.** Utah R. Prof'l Conduct 3.1.

solutely not" reasonable to charge $6,600 for six hours of work. In addition, even if Mr. Long was entitled to some compensation for his six hours of work, he admitted that the appropriate amount for recovery would be $1,500, not $6,600. Despite these admissions, Mr. Long caused a debt collection action to be filed against Mr. Shepard for $7,775.34. Because Mr. Long knew that he was not entitled to the $7,775.34 he demanded in his debt collection action, his claim was frivolous.

¶ 58 For the foregoing reasons, we conclude that the Committee did not err in finding that Mr. Long's conduct violated rule 3.1 of the Utah Rules of Professional Conduct.

### C. Rule 5.3(a) and Rule 5.5(a)

■ ¶ 59 Rule 5.3(a) states that when an attorney employs nonlawyers, the attorney must make reasonable efforts to establish "measures giving reasonable assurance that the [nonlawyer's] conduct is compatible with the professional obligations of the lawyer."[46] And one of an attorney's professional obligations is to ensure that nonlawyers do not engage in the unauthorized practice of law.[47] Rule 5.5(a) also provides that an attorney shall not *assist* another individual in the unauthorized practice of law.[48]

¶ 60 The Committee concluded that in the Nelson Matter, Mr. Scheeler's conduct constituted the unauthorized practice of law.[49] Based on this conclusion, the Committee found that Mr. Long violated rule 5.3(a) "by

failing to make reasonable efforts to ensure that there were in effect measures" assuring that Mr. Scheeler was not engaged in the unauthorized practice of law. And the Committee found that Mr. Long violated rule 5.5(a) by assisting Mr. Scheeler in the unauthorized practice of law because he knew of Mr. Scheeler's conduct and either approved or ratified those actions. Mr. Long challenges both of these findings on the basis that they are not supported by substantial evidence.

¶ 61 While there is evidence in the record that Mr. Long knew of Mr. Scheeler's actions, we conclude that there is insufficient evidence to establish that Mr. Scheeler's conduct amounted to the unauthorized practice of law. The practice of law is defined as "the representation of the interests of another person by informing, counseling, advising, assisting, advocating for or drafting documents for that person through application of the law and associated legal principles to that person's facts and circumstances."[50] Despite this broad definition, we have specifically allowed nonlawyers to "[r]epresent[ ] a party in any mediation" or "[s]erv[e] in a neutral capacity as a mediator."[51] As part of the mediation, our rules allow nonlawyer mediators to prepare written settlement agreements memorializing the parties' agreed-upon terms.[52] But our case law makes clear that nonlawyers may not prepare pleadings for use in litigation or draft court documents to implement or enforce a mediated settlement without an attorney's supervision.[53]

46. *Id.* 5.3(a).

47. *See id.* 5.5.

48. *See id.* 5.5(a).

49. Again, the Committee Chair reached this conclusion based on his belief that Mr. Long conceded that Mr. Scheeler's conduct amounted to the unauthorized practice of law. But Mr. Long disputes that concession, and we cannot find such a concession in the record.

50. Sup. Ct. R. Prof'l Practice 14–802(b)(1).

51. *Id.* 14–802(c)(7), (9).

52. *See* Utah R. Ct.–Annexed Alt. Dispute Resolution 101(e) ("In the event that a settlement to all issues is reached during the mediation confer-

ence . . . the mediator shall prepare . . . a written settlement agreement. . . ."); *Id.* 104 Canon VIII(b) ("Mediators may make suggestions and may draft proposals for consideration by the parties and their attorneys"); *see also* ABA Section of Dispute Resolution, Resolution on Mediation and the Unauthorized Practice of Law, (2002) available at http://www.americanbar.org/counterto/dam/aba/migrated/dispute/resolution 2002.pdf (explaining that "[t]he preparation of a memorandum of understanding or settlement agreement by a mediator, incorporating the terms of settlement specified by the parties, does not constitute the practice of law").

53. *See, e.g., Bd. of Comm'rs of the Utah State Bar v. Petersen*, 937 P.2d 1263, 1267–68 (Utah 1997) (stating that the practice of law includes "drafting complaints, drafting or negotiating contracts, drafting wills, [and] counseling or giving advice

¶ 62 In this case, the record shows that Mr. Nelson believed that Mr. Scheeler was an attorney. In addition, there is evidence that Mr. Scheeler conducted a mediation between Ms. Smith and Mr. Merritt. Mr. Scheeler then drafted a settlement agreement that addressed the division of personal property between the parties. But this evidence alone is not enough to establish that Mr. Scheeler was engaged in the unauthorized practice of law. Specifically, the OPC has not provided any evidence or explanation showing why Mr. Nelson believed that Mr. Scheeler was an attorney. Furthermore, it is not clear in the record whether Mr. Scheeler's conduct of drafting the settlement agreement from the mediation went beyond merely memorializing the resolution reached by Ms. Smith and Mr. Merritt. Without more evidence, there is not enough to show that Mr. Scheeler's conduct exceeded the bounds of approved nonlawyer conduct such that it constituted the unauthorized practice of law.[54]

¶ 63 Because there is insufficient evidence to show that Mr. Scheeler's actions constituted the unauthorized practice of law, there is not substantial evidence in the record to establish that Mr. Long either assisted Mr. Scheeler or failed to take reasonable measures to ensure that Mr. Scheeler did not engage in the practice of law. Thus, the Committee's finding that Mr. Long violated rules 5.3(a) and 5.5(a) is not supported by substantial evidence. As these alleged violations provided the basis for the order of public reprimand in the Nelson Matter,[55] we vacate the Committee's order of discipline in that matter. Because Mr. Long already received a public reprimand in this matter, we instruct the Utah State Bar to print a retraction upon receipt of a request from Mr. Long.

¶ 64 In sum, we uphold the Committee's findings that Mr. Long's conduct violated rules 1.5(a) and 3.1. But based on the insufficient evidence in the record, we reverse and vacate the Committee's finding that Mr. Long violated rules 5.3(a) and 5.5(a) of the Utah Rules of Professional Conduct.

## III. THE COMMITTEE'S SANCTIONS ARE APPROPRIATE BECAUSE EACH IS BASED ON DIFFERENT FACTS AND CIRCUMSTANCES

 ¶ 65 Having vacated the Committee's finding in the Nelson Matter, we next address Mr. Long's argument that the Committee's remaining sanctions are inappropriate. Mr. Long contends that his sanction of a public reprimand in the Henriod Matter is inappropriate because his conduct in that matter did not cause any injury. He also asserts that his sanction of a nonpublic admonition in the Shepard Matter is inconsistent with the discipline he received in the Henriod Matter because both matters involved violations of rule 1.5(a), rule 7.1, and rule 7.5(d). Thus, Mr. Long asserts that the sanctions he received are inappropriate and should be vacated. We disagree.

¶ 66 The Utah Standards for Imposing Lawyer Sanctions, part of the Supreme

---

on legal matters"); *See also* Utah State Bar Ethics Advisory Opinion 05–03 (2005) (providing that "[w]hen the mediator performs tasks that are the practice of law ... such as the preparation of pleadings for use in litigation, the mediator is subject to the Utah Rules of Professional Conduct").

54. We note that Mr. Scheeler's conduct of mediating a dispute when his employer represented one of the parties may violate the ethical obligations of mediators. *See* Utah R. Ct.–Annexed Alt. Dispute Resolution 104 (including the requirement that mediators remain impartial and disclose potential conflicts of interest). Therefore, the Committee Chair may be correct that it might have been "an inappropriate act for a representative of [Mr.] Long's office [to purport to act as a neutral mediator] given that [Mr.]

Long represented one of the parties to the mediation." But the Committee did not base its finding that Mr. Long violated rule 5.3(a) and rule 5.5(a) on the fact that Mr. Scheeler may have violated an ethical obligation of a mediator. Instead, the Committee's findings were based on its belief that Mr. Scheeler's conduct amounted to the unauthorized practice of law.

55. The Committee's order of a public reprimand in the Nelson Matter was based on its conclusion that Mr. Long violated rules 5.3(a), 5.5(a), and 8.4(a) of the Utah Rules of Professional Conduct. Rule 8.4(a) provides that "[i]t is professional misconduct for a lawyer to ... violate or attempt to violate the Rules of Professional Conduct." Utah R. Prof'l Conduct 8.4(a). Thus, if Mr. Long did not violate rule 5.3(a) or 5.5(a), he could not have violated rule 8.4(a).

Court Rules of Professional Practice, provide a system for determining appropriate sanctions for lawyer misconduct.[56] This system is designed to "permit[ ] flexibility and creativity in assigning [the particular] sanctions in particular cases."[57] In determining an appropriate sanction, the Committee should consider "(a) the duty violated, (b) the lawyer's mental state, (c) the potential or actual injury caused by the lawyer's misconduct, and (d) the existence of aggravating or mitigating factors."[58]

¶ 67 Although the Utah Standards for Imposing Lawyer Sanctions provide nine categories of sanctions,[59] only the sanctions of public reprimand and nonpublic admonition are relevant to this case. The rules provide that a public reprimand is generally appropriate when a lawyer "negligently engages in professional misconduct . . . and causes injury to a party."[60] In contrast, a nonpublic admonition is generally appropriate when a lawyer "negligently engages in professional misconduct . . . and causes little to no injury to a party . . . but exposes a party . . . to potential injury."[61]

¶ 68 Contrary to Mr. Long's argument, the Committee was correct in imposing a public reprimand in the Henriod Matter because Mr. Long's conduct in that matter caused his clients to suffer an injury. Specifically, Mr. Long's clients were injured when he charged and collected an unreasonable fee for the services he performed.

¶ 69 Furthermore, the sanction in the Henriod Matter is not inconsistent with the nonpublic admonition imposed in the Shepard Matter because each case involves different facts and circumstances. In the Shepard Matter, a nonpublic admonition is appropriate because Mr. Shepard suffered little to no injury since Mr. Long ultimately dismissed his collection action.[62]

¶ 70 Because the recommended sanctions stem from different facts and circumstances, they are appropriate under the rules and are therefore consistent with each other. Accordingly, we affirm the Committee's sanctions of a public reprimand in the Henriod Matter and a nonpublic admonition in the Shepard Matter.

## CONCLUSION

¶ 71 We hold that the Screening Panel did not violate Mr. Long's due process rights, did not violate the RLDD, and did not deviate from our precedent by failing to provide particularized findings of fact before recommending a nonpublic admonition or a public reprimand. In addition, we hold that the Committee did not err in finding that Mr. Long's actions violated rules 1.5(a) and 3.1 of the Utah Rules of Professional Conduct. But we hold that there is insufficient evidence to support the Committee's finding that Mr. Long violated rules 5.3(a) and 5.5(a) in the Nelson Matter. Thus, we vacate the Committee's order of public reprimand in that matter. Finally, we hold that the Screening Panel's remaining recommended sanctions are appropriate because each sanction is based on different facts and circumstances. Accordingly, we affirm the Committee's order of nonpublic admonition in the Shepard Matter and the order of public reprimand in the Henriod Matter.

¶ 72 Chief Justice DURHAM, Justice PARRISH, Justice NEHRING, and Justice LEE concur in Associate Chief Justice DURRANT's opinion.

---

56. *See* Sup. Ct. R. Prof'l Practice 14–602(d).

57. *Id.*

58. *Id.* 14–604.

59. *Id.* 14–603 (listing possible sanctions of disbarment, suspension, interim suspension, public reprimand, admonition, probation, resignation with discipline pending, other sanctions and remedies, and reciprocal discipline).

60. *Id.* 14–605(c)(1).

61. *Id.* 14–605(d)(1).

62. Furthermore, the Committee explicitly stated that Mr. Long's dismissal of the lawsuit constituted a mitigating factor. The presence of a mitigating factor in this matter also supports the conclusion that Mr. Long's sanctions are not inconsistent.